NO. 07-01-0111-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 31, 2001

_____

SHANNA PEREZ, INDIVIDUALLY AND ON BEHALF
OF THE ESTATE OF PEDRO PEREZ, AND AS NEXT
FRIEND OF SAMANTHA PEREZ, APPELLANT

V.

WILLIAMS & PETERS CONSTRUCTION CO., INC., APPELLEE

_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 96-556,744; HONORABLE J. BLAIR CHERRY, JUDGE

_____

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

In one issue, appellant Shanna Perez, as next friend of Samantha Perez, challenges a take-nothing summary judgment in appellant's suit against appellee Williams & Peters Construction Co., Inc. The judgment was rendered in a suit brought by appellant, individually and as next friend of Samantha Perez, seeking to recover damages resulting

from the death of Pedro Perez (Pedro) in the course of his employment with appellee.[1]  In her sole issue, appellant argues the judgment was improper because she presented more than a scintilla of evidence that appellee was guilty of gross negligence that resulted in Pedro's death.  For reasons we later recount, we affirm the judgment of the trial court.

Appellee operates a series of bins at its job site that hold sand and other bulk materials.  One of Pedro's jobs was to clean out the bins before they were to be filled with another material.  On June 14, 1994, while cleaning out one of the bins, he was asphyxiated by sand dumped into the bin by Clarence Boyd, another employee.  It is undisputed that at the time of Pedro's death, appellee was a subscriber to worker's compensation insurance.  Therefore, appellant's only viable claim was to obtain a gross negligence finding.

Appellee had filed a no-evidence motion for summary judgment.  Appellant contends that to avoid summary judgment, she was only obliged to produce more than a scintilla of evidence to raise a genuine issue of material fact and that she did so.  Under Rule 166a(i) of the Rules of Civil Procedure, a party may seek a summary judgment when there is no evidence of one or more essential elements of a claim or defense upon which an adverse party has the burden of proof.  The proper inquiry in such a proceeding is whether the non-movant produced any probative evidence to raise a material fact issue

---

[1]Summary judgment was previously granted in favor of Williams & Peters Construction Company against Shanna Perez in her individual capacity on the basis that her claims were time barred.  That judgment was not appealed.

and in determining that inquiry, we must consider all the evidence in a light most favorable to the party against whom the summary judgment was rendered and disregard all contrary evidence and inferences. *Roth v. FFP Operating Partners, L.P.,* 994 S.W.2d 190, 195 (Tex.App.–Amarillo 1999, pet. denied). If the non-movant presents more than a scintilla of probative evidence to raise a genuine material fact issue, summary judgment is improper. *Id.* More than a scintilla of evidence is produced when the evidence rises to a level such that reasonable and fair-minded people would be able to differ in their conclusions. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998).

Initially, we note that in the trial court's order granting summary judgment, it states that the court considered the admissible evidence submitted in connection with the motion for summary judgment and the plaintiff's response. However, there is nothing in the record before us that shows what evidence was actually tendered at the hearing, so we have nothing to indicate what evidence the trial court considered admissible in making its determination. Nevertheless, because appellee does not argue the evidence referred to us by appellant in her brief was not admissible, we will assume it was the evidence considered by the trial court in arriving at its decision, and we will likewise consider it in making our review. *See* Tex. R. App. P. 38.1(f).

Section 408.001 of the Texas Labor Code provides that the worker's compensation laws do not prohibit the recovery of exemplary damages by the surviving heirs or spouse of a deceased employee whose death was caused by an intentional act or omission of the

3

employer or by the employer's gross negligence.  Tex. Lab. Code Ann. § 408.001(b) (Vernon 1996).  Gross negligence has the meaning set forth in section 41.001 of the Civil Practice and Remedies Code.  *Id*. § 408.001(c).  At the time this accident occurred, that section provided that gross negligence "means more than momentary thoughtlessness, inadvertence or error of judgment.  It means such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(5) (Vernon Supp. 1994).  In *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10 (Tex. 1994), the court explicated that gross negligence includes two elements:  1) when viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and 2) the actor must have actual, subjective awareness of the risk involved, but proceeds in conscious indifference to the rights, safety, or welfare of others.  *Id.* at 23.  That definition has now been included in the definition of "malice" as required for an award of exemplary damages under the Civil Practice and Remedies Code.  Tex. Civ. Prac. & Rem. Code Ann. §§ 41.001(7)(B) and 41.003(a) (Vernon 1997).

Appellant lists eight facts which she posits demonstrate that the acts or omissions of appellee presented an extreme degree of risk considering the probability and magnitude of the potential harm to others:

1)  The hopper in which Pedro died was a confined space as defined by the Occupational Safety and Health Administration (OSHA).

4

2) The hopper was not marked to inform employees of the existence, locations, and dangers of such spaces.

3) Employees were not protected from the hazards of asphyxiation through the implementation of a written permit confined space entry program mandated by OSHA.

4) Appellee did not develop and implement procedures and practices to ensure safe entry into the hoppers.

5) Pedro was not provided an adequate means to egress the hopper.

6) Pedro did not receive training before being assigned duties involving permit-required confined space.

7) There was no lockout/tagout procedure utilized by appellee to ensure the shutdown of equipment prior to persons entering the hopper.

8) Pedro's autopsy shows he died from aspirational asphyxia after having sand dumped into the hopper.

She further relies on the report of an engineering expert, Dr. Edward Anderson. In that report, he opines in part:

My review of this accident leads me to the conclusion that it would have not occurred if the defendants had practiced the OSHA Permit-required Confined Spaces program or at least the significant features of this and similar confined spaces safety programs. The important features of these programs are (a) training, (b) awareness procedures, (c) verification of the safety of the space prior to entry and during occupation, (d) escape procedures and equipment, and (e) protection from dangerous external events. These five features constitute a minimal entry and occupation of a confined space safety program and are discussed with respect to the accident below. Unfortunately, I found little or no evidence of these five elements being in place at the location and time of this accident.

\* \* \*

In view of the fact that the evidence indicates that no significant effort had been made to address any of the five points of a basic confined safety procedure, I can only conclude that those responsible for the safety of Mr.

5

Perez had willfully disregarded his safety if not by intend [sic] certainly by omission. It is my opinion that this constitutes gross negligence on the part of those responsible for Mr. Perez's safety.

Appellant argues that "the presence and recognition of the need for regulations and the death resulting from violations thereof present at the very least a scintilla of evidence that the activity which resulted in Pedro Perez' death involved an extreme degree of risk."

In an affidavit given several days after the accident, Clarence Boyd averred that prior to discovering Pedro in bin #2, he had remarked, upon being asked where Pedro was, that he hoped he was not in one of the bins, "because if he is, he's dead." In his deposition, taken six years after the occurrence, Boyd stated that if someone was in a bin and was covered with sand, that person was going to die. Thus, there was some evidence, when viewed in the light most favorable to appellant, that the act of filling the bins with sand could present an extreme risk. However, there was no evidence as to the likelihood that someone would be cleaning the bins at the same time they were to be filled with new material. There was also evidence that bin #2 was not to be cleaned that day.

Even assuming there was an extreme degree of risk from the act or omission, we must determine whether appellee had actual subjective awareness of the risk involved in this instance but proceeded in conscious indifference to the rights, safety, or welfare of Pedro. Simple negligence is separated from gross negligence by the defendant's state of mind. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex. 1981). A defendant's mental state may be established by circumstantial evidence. *Moriel*, 879 S.W.2d at 23. An

6

employer may be grossly negligent as a result of its own conduct or through its responsibility for the conduct of its employees. *Durham Transp. Inc. v. Valero*, 897 S.W.2d 404, 412 (Tex.App.--Corpus Christi 1995, writ denied).

In support of her proposition that she presented more than a scintilla of evidence on this issue, appellant relies on several specific items of evidence. One such item is Boyd's testimony that he hoped Pedro was not in one of the bins, because if he was, "he was dead." Boyd also described the normal procedure utilized, that Pedro would get in a bin to clean it out, and if he was in a bin when Boyd started the front-end loader to catch the material coming out of the bin, Pedro would wave his shovel back and forth so Boyd could see him. On the day of the incident, a truck was being used to catch the material coming out of the bins rather than the normal loader because it was faster. A loader smaller than usual was also being used to load the bins. That being so, appellant posits, Pedro had no warning that operations were about to commence and the only warning system in place, *i.e.*, the waving of the shovel was not used. Appellant also points out that appellee was in violation of numerous federal standards designed to prevent this sort of accident.

Appellant further relies upon the affidavit of her expert, Dr. Anderson, who offered the opinions we have previously recited, and who also opined that there appeared to be a complete lack of emergency egress equipment in the bin and Pedro was not protected from burial by material being added to the bin from above. Referring to an office conversation to the effect that bin #2 was not to be cleaned, which occurred allegedly in

7

Pedro's presence in the office prior to the incident, Dr. Anderson reasons, "[a] simple conversation about the procedure that was going to be used at that time and that may or may not have been overheard by Mr. Perez does not constitute adequate communication in my opinion."

Through his affidavit, and in his deposition testimony, Boyd averred that in the control room the morning of the accident, he told Pedro, Danny Ortiz, and Mike Peters, the plant foreman, that there was no need to clean bin #2. Pedro was still in the control room when Boyd left to get the truck to begin cleaning the bins. Pedro apparently later left the control room, but was not missed by anyone for almost an hour because, it was averred, he often went to use the bathroom during that time of the day. Ortiz then decided to run the truck to clean bins, so Boyd began filling bins, beginning with bin #2. Boyd stated positively that the loader could be heard by the person in the bin so that a person cleaning would know to signal his presence. Boyd testified that he told Pedro they were not going to clean bin #2 that day. Thus, he did not believe Pedro was in bin #2, but believed he was in the control room with Mike Peters, because that was the last place he had seen him. Boyd also averred that Pedro never signaled he was in the bin.

There is evidence that appellee may not have been in compliance with some of the requirements of OSHA at the time of the incident, such as a lack of training on work in confined spaces, a means of egress from the bins, and implementation of a confined space program. It is also undisputed that the owners of the company knew it was normal procedure that the person in the bin would wave his shovel as a signal to the person in the

8

loader or truck that he was in the bin. The violation of OSHA regulations is evidence of the standard of care due to employees. *See Wal-Mart Stores, Inc. v. Seale*, 904 S.W.2d 718, 720 (Tex.App--San Antonio 1995, no pet.). Such violations may sometimes serve as the basis for a gross negligence finding.

However, the court's holding in *Louisiana Pacific Corp. v. Andrade*, 19 S.W.3d 245 (Tex. 1999), is instructive on the subjective element of gross negligence. In that case, Andrade, an employee of a contractor, was attempting to reattach plastic covering that had come loose from a second story window. To do so, he climbed a ladder which he had leaned against metal rails that were used to operate an overhead electric crane. Andrade had been told that the electricity was turned off, but when he touched one of the rails, he received an electric shock. While there was evidence that the defendant did not have a written lock-out procedure for electrical equipment, did not have routine safety meetings, and did not have company-wide safety meetings or safety policies and training, the managers testified they subjectively believed they had locked out the crane or seen someone else do so before Andrade began work. *Id.* at 248. Thus, there was no evidence that the defendant had actual, subjective knowledge of the risk that the crane was energized that day or was consciously indifferent to the risk so as to allow recovery for gross negligence. *Id*.

Appellant primarily relies on *Mobil Oil Corporation v. Ellender*, 968 S.W.2d 917 (Tex. 1998) in support of its position. However, we note that the *Andrade* court distinguished the facts before it from those before the *Ellender* court by noting that while Mobil Oil

9

Corporation had a detailed policy for monitoring, testing, and warning its own employees of the risks of benzene exposure, the substance involved there, it had no such policy for contract employees. This, the *Andrade* court noted, indicated that Mobil knew of the risks of benzene exposure but nevertheless proceeded with conscious indifference toward the safety of contract workers. *Andrade*, 19 S.W.3d at 247-48. However, in *Andrade,* the court held the lack of a corporate policy in its case did not support the same inference because in this instance, the managers subjectively believed the crane had been locked out. *Id.* at 248.

Similarly, in the instant case, there is no evidence that Boyd or the company officers or managers subjectively knew of the particular risk to Pedro on the day of the incident or acted in conscious disregard of a risk to Pedro. Indeed, the evidence here was that Pedro was present when there was a discussion that no cleaning would be done in bin #2. Pedro was also still present in the control room when the plant began operations, and Boyd left to begin his work. Thus, under the evidence, Pedro had no reason to be in bin #2 that day. Although the procedures used by the company may have been inadequate, there has been no demonstration of a "conscious indifference" to the risk that he was in bin #2. Appellant's issue is overruled.

Finding that the trial court did not err in granting appellee's summary judgment, we affirm the judgment of the trial court.

                              John T. Boyd
                              Chief Justice

Quinn, J., not participating.

Do not publish.