NO. 07-01-0111-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 31, 2001



______________________________




SHANNA PEREZ, INDIVIDUALLY AND ON BEHALF


OF THE ESTATE OF PEDRO PEREZ, AND AS NEXT


FRIEND OF SAMANTHA PEREZ, APPELLANT



V.



WILLIAMS & PETERS CONSTRUCTION CO., INC., APPELLEE




_________________________________



FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;



NO. 96-556,744; HONORABLE J. BLAIR CHERRY, JUDGE



_______________________________



Before BOYD, C.J., and QUINN and JOHNSON, JJ.

 In one issue, appellant Shanna Perez, as next friend of Samantha Perez,
challenges a take-nothing summary judgment in appellant's suit against appellee Williams
& Peters Construction Co., Inc. The judgment was rendered in a suit brought by appellant,
individually and as next friend of Samantha Perez, seeking to recover damages resulting
from the death of Pedro Perez (Pedro) in the course of his employment with appellee. (1)
 In
her sole issue, appellant argues the judgment was improper because she presented more
than a scintilla of evidence that appellee was guilty of gross negligence that resulted in
Pedro's death. For reasons we later recount, we affirm the judgment of the trial court.

 Appellee operates a series of bins at its job site that hold sand and other bulk
materials. One of Pedro's jobs was to clean out the bins before they were to be filled with
another material. On June 14, 1994, while cleaning out one of the bins, he was
asphyxiated by sand dumped into the bin by Clarence Boyd, another employee. It is
undisputed that at the time of Pedro's death, appellee was a subscriber to worker's
compensation insurance. Therefore, appellant's only viable claim was to obtain a gross
negligence finding.

 Appellee had filed a no-evidence motion for summary judgment. Appellant
contends that to avoid summary judgment, she was only obliged to produce more than a
scintilla of evidence to raise a genuine issue of material fact and that she did so. Under
Rule 166a(i) of the Rules of Civil Procedure, a party may seek a summary judgment when
there is no evidence of one or more essential elements of a claim or defense upon which
an adverse party has the burden of proof. The proper inquiry in such a proceeding is
whether the non-movant produced any probative evidence to raise a material fact issue
and in determining that inquiry, we must consider all the evidence in a light most favorable
to the party against whom the summary judgment was rendered and disregard all contrary
evidence and inferences. Roth v. FFP Operating Partners, L.P., 994 S.W.2d 190, 195
(Tex.App.-Amarillo 1999, pet. denied). If the non-movant presents more than a scintilla
of probative evidence to raise a genuine material fact issue, summary judgment is
improper. Id. More than a scintilla of evidence is produced when the evidence rises to a
level such that reasonable and fair-minded people would be able to differ in their
conclusions. Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997), cert.
denied, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998).

 Initially, we note that in the trial court's order granting summary judgment, it states
that the court considered the admissible evidence submitted in connection with the motion
for summary judgment and the plaintiff's response. However, there is nothing in the record
before us that shows what evidence was actually tendered at the hearing, so we have
nothing to indicate what evidence the trial court considered admissible in making its
determination. Nevertheless, because appellee does not argue the evidence referred to
us by appellant in her brief was not admissible, we will assume it was the evidence
considered by the trial court in arriving at its decision, and we will likewise consider it in
making our review. See Tex. R. App. P. 38.1(f).

 Section 408.001 of the Texas Labor Code provides that the worker's compensation
laws do not prohibit the recovery of exemplary damages by the surviving heirs or spouse
of a deceased employee whose death was caused by an intentional act or omission of the
employer or by the employer's gross negligence. Tex. Lab. Code Ann. § 408.001(b)
(Vernon 1996). Gross negligence has the meaning set forth in section 41.001 of the Civil
Practice and Remedies Code. Id. § 408.001(c). At the time this accident occurred, that
section provided that gross negligence "means more than momentary thoughtlessness,
inadvertence or error of judgment. It means such an entire want of care as to establish
that the act or omission was the result of actual conscious indifference to the rights, safety,
or welfare of the person affected." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(5) (Vernon
Supp. 1994). In Transportation Ins. Co. v. Moriel, 879 S.W.2d 10 (Tex. 1994), the court
explicated that gross negligence includes two elements: 1) when viewed objectively from
the standpoint of the actor, the act or omission must involve an extreme degree of risk,
considering the probability and magnitude of the potential harm to others, and 2) the actor
must have actual, subjective awareness of the risk involved, but proceeds in conscious
indifference to the rights, safety, or welfare of others. Id. at 23. That definition has now
been included in the definition of "malice" as required for an award of exemplary damages
under the Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. §§
41.001(7)(B) and 41.003(a) (Vernon 1997).

 Appellant lists eight facts which she posits demonstrate that the acts or omissions
of appellee presented an extreme degree of risk considering the probability and magnitude
of the potential harm to others:

 1) The hopper in which Pedro died was a confined space as defined by the
Occupational Safety and Health Administration (OSHA).


 2) The hopper was not marked to inform employees of the existence,
locations, and dangers of such spaces.


 3) Employees were not protected from the hazards of asphyxiation through
the implementation of a written permit confined space entry program
mandated by OSHA.


 4) Appellee did not develop and implement procedures and practices to
ensure safe entry into the hoppers.


 5) Pedro was not provided an adequate means to egress the hopper.


 6) Pedro did not receive training before being assigned duties involving
permit-required confined space.


 7) There was no lockout/tagout procedure utilized by appellee to ensure the
shutdown of equipment prior to persons entering the hopper.


 8) Pedro's autopsy shows he died from aspirational asphyxia after having
sand dumped into the hopper.


She further relies on the report of an engineering expert, Dr. Edward Anderson. In that
report, he opines in part:

 My review of this accident leads me to the conclusion that it would have not
occurred if the defendants had practiced the OSHA Permit-required Confined
Spaces program or at least the significant features of this and similar
confined spaces safety programs. The important features of these programs
are (a) training, (b) awareness procedures, (c) verification of the safety of the
space prior to entry and during occupation, (d) escape procedures and
equipment, and (e) protection from dangerous external events. These five
features constitute a minimal entry and occupation of a confined space
safety program and are discussed with respect to the accident below. 
Unfortunately, I found little or no evidence of these five elements being in
place at the location and time of this accident.


* * *



 In view of the fact that the evidence indicates that no significant effort had
been made to address any of the five points of a basic confined safety
procedure, I can only conclude that those responsible for the safety of Mr.
Perez had willfully disregarded his safety if not by intend [sic] certainly by
omission. It is my opinion that this constitutes gross negligence on the part
of those responsible for Mr. Perez's safety. 


Appellant argues that "the presence and recognition of the need for regulations and the
death resulting from violations thereof present at the very least a scintilla of evidence that
the activity which resulted in Pedro Perez' death involved an extreme degree of risk."

 In an affidavit given several days after the accident, Clarence Boyd averred that
prior to discovering Pedro in bin #2, he had remarked, upon being asked where Pedro was,
that he hoped he was not in one of the bins, "because if he is, he's dead." In his deposition,
taken six years after the occurrence, Boyd stated that if someone was in a bin and was
covered with sand, that person was going to die. Thus, there was some evidence, when
viewed in the light most favorable to appellant, that the act of filling the bins with sand could
present an extreme risk. However, there was no evidence as to the likelihood that
someone would be cleaning the bins at the same time they were to be filled with new
material. There was also evidence that bin #2 was not to be cleaned that day.

 Even assuming there was an extreme degree of risk from the act or omission, we
must determine whether appellee had actual subjective awareness of the risk involved in
this instance but proceeded in conscious indifference to the rights, safety, or welfare of
Pedro. Simple negligence is separated from gross negligence by the defendant's state of
mind. Burk Royalty Co. v. Walls, 616 S.W.2d 911, 922 (Tex. 1981). A defendant's mental
state may be established by circumstantial evidence. Moriel, 879 S.W.2d at 23. An
employer may be grossly negligent as a result of its own conduct or through its
responsibility for the conduct of its employees. Durham Transp. Inc. v. Valero, 897 S.W.2d
404, 412 (Tex.App.--Corpus Christi 1995, writ denied).

 In support of her proposition that she presented more than a scintilla of evidence
on this issue, appellant relies on several specific items of evidence. One such item is
Boyd's testimony that he hoped Pedro was not in one of the bins, because if he was, "he
was dead." Boyd also described the normal procedure utilized, that Pedro would get in a
bin to clean it out, and if he was in a bin when Boyd started the front-end loader to catch
the material coming out of the bin, Pedro would wave his shovel back and forth so Boyd
could see him. On the day of the incident, a truck was being used to catch the material
coming out of the bins rather than the normal loader because it was faster. A loader
smaller than usual was also being used to load the bins. That being so, appellant posits,
Pedro had no warning that operations were about to commence and the only warning
system in place, i.e., the waving of the shovel was not used. Appellant also points out that
appellee was in violation of numerous federal standards designed to prevent this sort of
accident.

 Appellant further relies upon the affidavit of her expert, Dr. Anderson, who offered
the opinions we have previously recited, and who also opined that there appeared to be
a complete lack of emergency egress equipment in the bin and Pedro was not protected
from burial by material being added to the bin from above. Referring to an office
conversation to the effect that bin #2 was not to be cleaned, which occurred allegedly in
Pedro's presence in the office prior to the incident, Dr. Anderson reasons, "[a] simple
conversation about the procedure that was going to be used at that time and that may or
may not have been overheard by Mr. Perez does not constitute adequate communication
in my opinion."

 Through his affidavit, and in his deposition testimony, Boyd averred that in the
control room the morning of the accident, he told Pedro, Danny Ortiz, and Mike Peters, the
plant foreman, that there was no need to clean bin #2. Pedro was still in the control room
when Boyd left to get the truck to begin cleaning the bins. Pedro apparently later left the
control room, but was not missed by anyone for almost an hour because, it was averred,
he often went to use the bathroom during that time of the day. Ortiz then decided to run
the truck to clean bins, so Boyd began filling bins, beginning with bin #2. Boyd stated
positively that the loader could be heard by the person in the bin so that a person cleaning
would know to signal his presence. Boyd testified that he told Pedro they were not going
to clean bin #2 that day. Thus, he did not believe Pedro was in bin #2, but believed he was
in the control room with Mike Peters, because that was the last place he had seen him.
Boyd also averred that Pedro never signaled he was in the bin.

 There is evidence that appellee may not have been in compliance with some of the
requirements of OSHA at the time of the incident, such as a lack of training on work in
confined spaces, a means of egress from the bins, and implementation of a confined
space program. It is also undisputed that the owners of the company knew it was normal
procedure that the person in the bin would wave his shovel as a signal to the person in the
loader or truck that he was in the bin. The violation of OSHA regulations is evidence of the
standard of care due to employees. See Wal-Mart Stores, Inc. v. Seale, 904 S.W.2d 718,
720 (Tex.App--San Antonio 1995, no pet.). Such violations may sometimes serve as the
basis for a gross negligence finding.

 However, the court's holding in Louisiana Pacific Corp. v. Andrade, 19 S.W.3d 245
(Tex. 1999), is instructive on the subjective element of gross negligence. In that case,
Andrade, an employee of a contractor, was attempting to reattach plastic covering that had
come loose from a second story window. To do so, he climbed a ladder which he had
leaned against metal rails that were used to operate an overhead electric crane. Andrade
had been told that the electricity was turned off, but when he touched one of the rails, he
received an electric shock. While there was evidence that the defendant did not have a
written lock-out procedure for electrical equipment, did not have routine safety meetings,
and did not have company-wide safety meetings or safety policies and training, the
managers testified they subjectively believed they had locked out the crane or seen
someone else do so before Andrade began work. Id. at 248. Thus, there was no evidence
that the defendant had actual, subjective knowledge of the risk that the crane was
energized that day or was consciously indifferent to the risk so as to allow recovery for
gross negligence. Id.

 Appellant primarily relies on Mobil Oil Corporation v. Ellender, 968 S.W.2d 917 (Tex.
1998) in support of its position. However, we note that the Andrade court distinguished the
facts before it from those before the Ellender court by noting that while Mobil Oil
Corporation had a detailed policy for monitoring, testing, and warning its own employees
of the risks of benzene exposure, the substance involved there, it had no such policy for
contract employees. This, the Andrade court noted, indicated that Mobil knew of the risks
of benzene exposure but nevertheless proceeded with conscious indifference toward the
safety of contract workers. Andrade, 19 S.W.3d at 247-48. However, in Andrade, the
court held the lack of a corporate policy in its case did not support the same inference
because in this instance, the managers subjectively believed the crane had been locked
out. Id. at 248.

 Similarly, in the instant case, there is no evidence that Boyd or the company officers
or managers subjectively knew of the particular risk to Pedro on the day of the incident or
acted in conscious disregard of a risk to Pedro. Indeed, the evidence here was that Pedro
was present when there was a discussion that no cleaning would be done in bin #2. Pedro
was also still present in the control room when the plant began operations, and Boyd left
to begin his work. Thus, under the evidence, Pedro had no reason to be in bin #2 that day. 
Although the procedures used by the company may have been inadequate, there has been
no demonstration of a "conscious indifference" to the risk that he was in bin #2. Appellant's
issue is overruled.

 


 Finding that the trial court did not err in granting appellee's summary judgment, we
affirm the judgment of the trial court. 


 John T. Boyd

 Chief Justice


Quinn, J., not participating.



Do not publish.
1. Summary judgment was previously granted in favor of Williams & Peters
Construction Company against Shanna Perez in her individual capacity on the basis that
her claims were time barred. That judgment was not appealed. 




ily:Tahoma;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-hansi-font-family:Calibri;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("07-09-0172-CR\(B\)%20Concurring%20Opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0172-CR\(B\)%20Concurring%20Opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0172-CR\(B\)%20Concurring%20Opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0172-CR\(B\)%20Concurring%20Opinion_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.5in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-title-page:yes;
 mso-footer:url("07-09-0172-CR\(B\)%20Concurring%20Opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
-->








NO. 07-09-0172-CR

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL A

 

APRIL 26, 2010

 

______________________________

 

 

JIMMY J. GOBER, APPELLANT

 

V.

 

THE STATE OF TEXAS, APPELLEE

 

 

_________________________________

 

FROM THE 137TH DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2008-421,987; HONORABLE CECIL G. PURYEAR, JUDGE

 

_______________________________

 

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

CONCURRING OPINION

            The
majority concludes that Appellant has failed to properly preserve for our
review any error raised by his single issue contending that the trial court
abused its discretion by overruling his motion to require a co-defendant to
invoke her Fifth Amendment privilege against self-incrimination outside the
presence of the jury.  Because I believe
the error was properly preserved, but further conclude that the error was
harmless, I concur in the decision of the Court.

Background

            Although
the majority opinion accurately summarizes the factual and procedural
background of this case, it is the State's alternative arguments that
differentiate the opinions of this Court. 
The State contends the trial court did not err by overruling Appellant's
motion to require Gloria Flores, an indicted co-defendant, to assert her Fifth
Amendment privilege against self-incrimination outside the presence of the
jury.  Alternatively, the State argues
that Appellant did not preserve that error (the argument accepted by the
majority).  Alternatively to that, the
State argues that Appellant's follow-up questions to the State's objectionable
questions, also causing Flores to invoke her Fifth Amendment privilege,
operated to "cure" the error. 
Finally, and again alternatively, the State argues that any error is
harmless.

Harmless Error Analysis

Other than
constitutional error, any error, defect, irregularity, or variance that does
not affect the appellant's substantial rights must be disregarded by an
appellate court in determining whether to reverse the decision of a lower
court.  Tex. R. App. P.
44.2(b) (Vernon 2003).  A substantial right is affected when
the error had a substantial and injurious effect or influence on the jury=s verdict.  Russell v. State, 113 S.W.3d 530, 549
(Tex.App.--Fort Worth 2003, pet. ref=d) (citing King v. State, 953 S.W.2d 266, 271
(Tex.Crim.App. 1997)).  In assessing
reversible error, an appellate court should consider the entire record,
including any testimony or physical evidence admitted for the jury's
consideration, the nature of the evidence supporting the jury's verdict, the
character of the alleged error and how it might be considered in connection
with other evidence in the case.  Motilla v. State, 78
S.W.3d 352, 355 (Tex.Crim.App. 2002). 
The reviewing court should also consider non-evidentiary elements of the
trial, including voir dire, the State's theory, and any defensive theories, the
jury instructions, and closing arguments. 
Id. 

Here, the error complained of by Appellant, to-wit: the trial court erred by overruling Appellant's motion to require
Flores, an indicted co-defendant, to assert her Fifth Amendment privilege
against self-incrimination outside the presence of the jury, is not
constitutional because none of Appellant's constitutional rights were
implicated.  Therefore, our harmless error
analysis must focus on whether any of Appellant's rights were substantially
affected by that error.

Appellant contends that he was
prejudiced because the jury was allowed to draw inappropriate conclusions from
the questions asked.  However, Appellant
was also allowed to ask questions which Flores equally answered by asserting
her Fifth Amendment privilege.  While Appellant's
questions did not "cure" the error invited by the State, they are
something this Court may consider in its harm analysis.  Because it is no more likely that the jury
drew incriminating inferences from the State's questions than it drew
exonerating inferences from Appellant's questions, we cannot conclude that allowing
these questions, in and of themselves, substantially
affected Appellant's rights.

Furthermore, considering the error in
relation to the rest of the evidence presented by the State, any inferences
that might have been injected by the questions is of only slight
significance.  The jury heard testimony
from the arresting officers, reviewed photographs of
the contraband seized, and heard portions of a recorded interview between an
officer and Appellant.  Considering the
entirety of the record, including the instructions from the court that the
verdict was to be based upon the evidence heard (as opposed to speculating on
what it didn't hear), there is virtually no reason to believe the jury's
verdict was based on this error.  Finding
that the error did not have a substantial and injurious effect or influence on
the jury's verdict, thereby substantially affecting Appellant's rights, I find
the error to be harmless and I concur in the conclusion reached by the majority
to affirm the judgment of the trial court.

 

                                                                                      Patrick A. Pirtle

                                                                                            Justice

 

 

Do not publish.