LOUISIANA–PACIFIC CORPORA-
TION, as successor to Kirby For-
est Industries, Inc., Petitioner,

v.

Luis ANDRADE and Travelers
Indemnity Co. of Rhode
Island, Respondents.

No. 98–0429.

Supreme Court of Texas.

Argued Sept. 15, 1999.

Decided Oct. 21, 1999.

Wallace B. Jefferson, San Antonio, Donean Surratt, Howard L. Close, Beaumont, Ellen B. Mitchell, San Antonio, for petitioner.

Chris E. Quinn, G.R. Flores, John Gerard Werner, Beaumont, for respondents.

Justice HANKINSON delivered the opinion of the Court.

Luis Andrade was injured while working for an asbestos-removal contractor on the premises of Kirby Forest Industries, Inc. In this cause, Kirby's successor-in-interest, Louisiana–Pacific Corp., challenges the legal sufficiency of the evidence to support the jury's gross-negligence finding against it. We conclude that no evidence supports that finding, and accordingly reverse and render judgment that Andrade take nothing on his gross-negligence claim.

Kirby contracted with Patton Asbestos Removal Service to remove asbestos from a power plant at a Kirby facility in Silsbee, Texas. The plant was being shut down in preparation for the asbestos removal. On his first day at work for Patton, Andrade and another Patton employee were directed to reattach plastic covering that had come loose from some second-story windows. To reach the windows, Andrade climbed up a ladder, which he had leaned against metal rails that were used to operate an overhead electric crane. Andrade and the other Patton employees had been told that the electricity was turned off, but when Andrade touched one of the rails, he received an electric shock and fell approximately thirty feet to the floor, suffering permanent head injuries.

Andrade sued Kirby and Louisiana–Pacific for negligence and gross negligence. The trial court rendered judgment on a jury's verdict in favor of Andrade for $2.5 million in actual damages and $2.5 million in punitive damages. The parties settled the actual-damages part of the case, but Louisiana–Pacific reserved the right to appeal the gross-negligence finding and the punitive-damages award. A divided court of appeals affirmed the punitive-damages award. 964 S.W.2d 944. We granted Louisiana–Pacific's petition for review.

Louisiana–Pacific challenges the legal sufficiency of the evidence to support the jury's gross-negligence finding. In *Transportation Insurance Co. v. Moriel*, we explained that gross negligence involves two components: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. 879 S.W.2d 10, 23 (Tex.1994). In this case, Louisiana–Pacific concedes that the energized crane created an extreme degree of risk and thus does not challenge the first component of the *Moriel* standard. Our analysis therefore focuses on the second component.

Focusing on the second, or subjective, component, we have explained that what separates ordinary negligence from gross negligence is the defendant's state of mind; in other words, the plaintiff must

show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care. *See Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 573 (Tex.1985); *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981). A plaintiff may establish the defendant's mental state by circumstantial evidence. *See Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex.1998); *Moriel*, 879 S.W.2d at 23. We turn now to the evidence supporting the jury's finding, which we review in the light most favorable to that finding. *See General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 595 (Tex.1999).

The parties do not take issue with the court of appeals' detailed recitation of all the evidence, *see* 964 S.W.2d at 946–51, and so we highlight only the evidence Andrade relies on to show Kirby's subjective awareness of and conscious indifference to the risk posed by the crane. Andrade relies primarily on evidence showing that Kirby did not have a written lock-out or tag-out procedure for electrical equipment, did not have routine safety meetings, and did not have company-wide safety policies or training. Kirby's president testified that he thought safety was the contractor's responsibility. He also testified that Kirby did not have any corporate policy about warning contractors of potential safety risks in Kirby's plant. The jury heard testimony from managers at other companies about their written lock-out policies, and from a safety expert who opined that Kirby's failure to have a written policy was not prudent, and that it was well known that such a policy could prevent many accidents.

Andrade also points to conflicts in the testimony of Kirby's on-site managers. Although the managers conceded that they had the responsibility to de-energize the rails and lock out the power source, their testimony conflicted over when the power was actually turned off. Mike Gregory, the power-plant manager, testified that he locked out the crane on his last day at the power plant, but he could not remember

whether that was the day before or three or four days before the accident. Ollie Pike, the general-services manager at the Silsbee facility, testified that he watched Gregory lock out the crane the day before the accident. Their testimony further conflicted over whether Gregory put a tag on the allegedly locked-out switch. Gregory also testified that he did not know of any Kirby policy for controlling the key used to lock out the crane; he just gave the key to Pike, who in turn gave the key to another Kirby employee.

As the crane was not locked out when the accident occurred, Andrade argues that the jury was entitled to infer from the lack of a corporate policy that Kirby was consciously indifferent to its contractors' welfare. And he urges that the jury could have chosen to disbelieve Gregory's and Pike's testimony that the crane was actually locked out at some time before the accident happened. The court of appeals agreed, concluding that "even though the evidence was uncontroverted that Gregory locked out the crane, the jury could determine the crane was never locked out," and that "[w]hether the crane was never locked out or was subsequently unlocked, Kirby employees would have been aware the crane was energized and hence aware of the risk." 964 S.W.2d at 951. We disagree.

While the evidence Andrade points to might clearly support a negligence finding, it is not legally sufficient to establish the subjective component of gross negligence. Evidence of simple negligence alone is not sufficient to establish gross negligence. *Moriel*, 879 S.W.2d at 22–23. Corporate safety policies, or the lack of them, can serve as the basis for a gross negligence finding. For example, in *Mobil Oil Corp. v. Ellender*, the plaintiff produced evidence that Mobil had a detailed policy of monitoring, testing, and warning its own employees to protect them from risks associated with exposure to benzene, but did not do so for contract workers. 968 S.W.2d at 924–25. We

concluded that this policy was legally sufficient evidence that Mobil knew of the extreme risks of benzene exposure, and despite this knowledge had an " 'unwritten practice or policy' " of not warning or testing contract workers, which permitted the jury to infer that Mobil knew the risks of benzene exposure yet proceeded with conscious indifference toward the safety of contract workers. *Id.; see also Burk Royalty Co.,* 616 S.W.2d at 922–23.

[redacted] Under the circumstances of this case, however, the lack of a corporate policy does not support an inference that Kirby personnel were subjectively aware of or consciously indifferent to the risk of injury to Andrade created by the electrified crane. Given the Kirby managers' testimony that they actually, subjectively believed that they had locked out the crane or witnessed someone else do so before Andrade began working, the failure to maintain a written lock-out policy is not evidence that the managers were consciously indifferent to the risks posed to Andrade by the crane in this case. Nor does the fact that the Kirby managers gave conflicting testimony about when they thought the crane had been locked out support an inference that Kirby personnel knew the crane was energized that day and nevertheless did not care whether Patton workers would encounter that risk. Rather, as the dissenting opinion in the court of appeals explains, "[T]he contradictions notwithstanding, all of the testimony indicated that the Kirby employees involved in the chain of the lock-out process *actually, subjectively* believed that they personally had either locked-out the crane, *or* that their personal subjective recollection of various events led them to believe that the crane had been locked-out by someone prior to Andrade beginning work on the day in question." 964 S.W.2d at 953. And "[w]hat is further lacking from the evidence, even inferentially, is proof that any Kirby personnel were *consciously indifferent* to the risk of electrocution if the crane was energized." *Id.* Under the facts and circumstances of this case, *see Sanchez,* 997 S.W.2d at 596 ("[a] court reviews all surrounding facts and circumstances to decide if a corporation itself is grossly negligent"), there is no evidence that Kirby had actual, subjective awareness of the risk that the crane was energized that day or was consciously indifferent of the risk to Andrade. Thus Andrade may not recover on his gross-negligence claim.

[redacted] We also disapprove of the court of appeals' refusal to conduct a factual-sufficiency review of the gross-negligence evidence. Citing its own opinion in *Mobil Oil Corp. v. Ellender,* which in turn cited *Moriel,* the court of appeals stated, "[f]actual insufficiency or great weight and preponderance review in gross negligence cases applies where the *amount* of punitive damages awarded has been preserved." 964 S.W.2d at 951 (citing *Mobil Oil Co. v. Ellender,* 934 S.W.2d 439, 448 (Tex.App.-Beaumont 1996), *rev'd in part on other grounds,* 968 S.W.2d 917 (Tex. 1998)). The notion that a party is not entitled to factual-sufficiency review of a gross-negligence finding and that such review is limited to challenges to the amount of punitive damages is simply incorrect. Nowhere in *Moriel* or any other case have we restricted the courts of appeals' duty to engage in proper factual-sufficiency review of gross-negligence findings. In *Moriel,* we reviewed only the legal sufficiency of the gross-negligence evidence because we are not authorized to conduct factual-sufficiency review. *See* TEX. CONST. art. V, § 6; *see also Coulson v. Lake LBJ Mun. Util. Dist.,* 781 S.W.2d 594, 597 (Tex.1989). Thus courts of appeals may consider properly raised factual-sufficiency issues challenging gross-negligence findings, and indeed have a duty to resolve such issues if necessary to final disposition of the appeal. *See* TEX.R.APP. P. 47.1; *Parrish v. Hunt,* 160 Tex. 378, 331 S.W.2d 304, 305 (1960).

Accordingly, we conclude that there is no evidence that Kirby was subjectively aware of and consciously indifferent to the

risk posed by the energized crane. Therefore, we reverse the court of appeals' judgment and render judgment that Andrade take nothing on his gross-negligence claim.