NO. 07-04-0222-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 18, 2005
_____

AGRIUM U.S., INC.,

Appellant

v.

VERNA CLARK,

Appellee
_____

FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 35,315; HON. WILLIAM D. SMITH, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and CAMPBELL, JJ.[1]

Agrium U.S., Inc. (Agrium) appeals from a judgment awarding exemplary damages to appellee Verna Clark (Verna), the widow of Melvin Clark (Clark). Clark, an employee of Agrium, died during the course of performing his duties. At the time, he was attempting to replace a discharge valve located in a highly pressurized line. The line had not been completely depressurized, however. And, as Clark removed a cover plate to access the

---

[1]Ex-chief Justice Philip Johnson did not participate in rendering this opinion though he sat on the panel at oral submission.

valve, the pressure in the line blew the plate from its seat and against Clark. He subsequently died from the injuries he sustained.

Verna and Clark's surviving children sued Agrium, alleging that the gross negligence of the company caused Clark's death. Upon trial, the jury found that the company had indeed acted with gross negligence and awarded Verna $2,000,000. No exemplary damages were awarded the children, however. Judgment awarding Verna $1,576,000 subsequently was entered by the trial court, and Agrium appealed.

Though three issues are before us, we need only address the first. It is dispositive. Through it, Agrium asserts that the jury's finding of gross negligence lacks the support of clear and convincing evidence. We sustain the issue and reverse the judgment.

*Applicable Law*

It is settled that one's gross negligence must be established by clear and convincing evidence. *Diamond Shamrock Refining Co. v. Hall*, 168 S.W.3d 164, 170 (Tex. 2005); TEX. CIV. PRAC. & REM. CODE ANN. §41.003(b) (Vernon Supp. 2005). Whether this burden has been met depends upon whether the quantum of evidence offered at trial is enough to permit a reasonable jury to form a firm conviction or belief that its finding is true. *Id.*, *quoting In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002). Furthermore, when applying the test, the reviewing court must interpret all the evidence of record in a light most favorable to the verdict. *Id.* So too must it 1) assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so and 2) disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.* Yet, undisputed facts contradicting the verdict need not be disregarded for that "'could skew the analysis . . . .'"

*Id.* And, only if upon considering all the evidence in the manner described, the reviewing court decides that no reasonable jury could form the requisite belief or conviction may it then hold the evidence legally insufficient. *Id.*

Next, gross negligence consists of objective and subjective elements. It is the latter which we address here. According to our Supreme Court and statute, the actor must have a subjective awareness of the risk involved and proceed with conscious indifference to the rights, safety, or welfare of others. *Id.*; *accord*, TEX. CIV. PRAC. & REM. CODE ANN. §41.001(11) (Vernon Supp. 2005) (defining gross neglect as an act or omission which, when viewed objectively from the standpoint of the actor at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and of which risk the actor had actual subjective awareness but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others). This standard is not met through proof of negligence. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(b) (Vernon Supp. 2005); *Lee Lewis Constr. Co. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Indeed, what separates ordinary negligence from gross negligence is the actor's state of mind. *Diamond Shamrock Refining Co. v. Hall*, 168 S.W.3d at 173, *quoting Louisiana-Pacific Corp v. Andrade*, 19 S.W.3d 245 (Tex. 1999). That is, not only must the actor have actually known of the peril but also his acts or omissions must demonstrate subjectively "'that he did not care'" about it. *Id.*; *Lee Lewis Constr. Co. v. Harrison*, 70 S.W.3d at 785; *General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 596 (Tex. 1999). We must caution, however, that an actor's failure to pursue the safest course available or provide the best warnings imaginable does not necessarily

3

equate to a want of caring. *General Motors Corp. v. Sanchez*, 997 S.W.2d at 597-98. Nor does the violation of a law or regulation inescapably evince conscious indifference. *See Williams v. Steve Indus., Inc.*, 699 S.W.2d 570, 574 (Tex. 1985) (finding that the driver's lack of a commercial driver's license did not establish gross negligence without proof that the driver had any prior speeding tickets, had caused or been involved in prior accidents, lacked experience driving big trucks, or was an incompetent or reckless driver or proof that his employer actually knew the driver operated the truck in a dangerous way).

And, while the existence or non-existence of safety or corporate policies touching upon the work being done may provide some basis for a gross negligence finding, *Louisiana-Pacific Corp. v. Andrade*, 19 S.W.3d at 247-48, that is not always true. Indeed, the absence of written policies 1) describing how to "lock-out or tag-out" electrical equipment or 2) warning others of potential safety risks did not support such a finding in *Louisiana-Pacific Corp.* This was so because those involved had thought that the particular equipment had been locked-out. *Id.* at 248.

Nor does the lack of redundant safety measures *ipso facto* establish gross negligence. The Supreme Court said as much in *Diamond Shamrock*. *Diamond Shamrock Refining Co. v. Hall*, 168 S.W.3d at 172 (stating that Diamond Shamrock's failure to implement redundant safety systems is not evidence of conscious indifference to the risk of explosion since the valve it utilized "appeared to have protected against the risk for fifteen years").

Simply put, the circumstances of each case must stand on their own. That particular acts or omissions may evince gross negligence in some situations does not mean that they

4

do in all situations.  Rather, all the circumstances are pivotal, and unless they permit a reasonable jury to develop a firm conviction or belief that the defendant "did not care" about the risk, there can be no gross negligence.

*Application of Law*

Verna attempted to establish gross negligence at bar through a plethora of evidence.  That latter consisted of testimony and documentation regarding the manner in which employees were to safely change the defective valve or other mechanisms in pressurized lines.  Moreover, that evidence involved instances of Agrium's 1) non-compliance with regulations issued by the Occupational Safety and Health Administration addressing the subject, 2) failure to install additional or inspect existing redundant safety systems, 3) lack of pertinent policies assuring that pressure values were opened and locked-out to prevent their closure while repairs were undertaken, 4) *de minimus* formal training on how to repair the discharge valve or remove the cover plate, and 5) failure to affix warning labels on the compressor as recommended by its manufacturer.

Yet, it is undisputed that Agrium had a general policy regarding the way its employees were to repair defective mechanisms within pressurized lines.  Furthermore, the policy mandated that "all energy [be] released/de-pressured."  This procedure was both used in the past and shown to be effective when fully implemented.  Indeed, even Verna's own expert conceded that Clark would not have been injured in the way he was had the pressure in the line been released before Clark attempted to remove the cover plate.

The company also had a policy obligating its workers to obtain a "safety work permit" before undertaking repairs like those attempted by Clark.  An aspect of that permitting system required that "[a]ll energy sources [be] isolated (locked and tagged)" and that "[a]ll

5

energy [be] released/de-pressured." And, while evidence indicated that employees sometimes undertook repairs without first obtaining the requisite permit, Verna does not argue that Agrium knew of or condoned the practice. Nor does she argue that the practice related to the repair of the valve which Clark sought to fix.

Other undisputed evidence illustrates that 1) Clark and his co-workers met to discuss the manner in which to complete the necessary repairs, 2) the vent valves necessary to release pressure from the line were opened, 3) one of the vents, however, was not fully opened, 4) it was believed that all the pressure had been released from the line, 5) at least one gauge was present in the control room to illustrate whether pressure remained in the line, 6) the gauge was operable at the time,[2] 7) Clark attempted to remove the cover plate without first obtaining the requisite safety work permit, and 8) when asked by his colleague whether they should obtain the permit before continuing, Clark uttered an expletive indicating that he did not wish to wait.

It is beyond doubt that other measures could have been taken by all involved to prevent the incident or reduce the risk involved. But what cannot be ignored is the fact that Agrium had in place procedures which obviated the danger inherent in working on pressurized lines. And, we find no evidence of record suggesting that had those procedures been completely followed, the incident would have nonetheless occurred. Nor did we find evidence that like incidents had occurred in the past despite full compliance with the procedures.

---

[2]Indeed, after the cover plate blew off its seat, an Agrium employee looked at the pressure gauge and saw indication that the line remained pressurized but was rapidly losing pressure.

6

The circumstances before us are quite akin to those in *Diamond Shamrock*. Though other actions could have been taken to prevent the incident in *Diamond Shamrock*, the check valve that had been installed protected against the risk there involved for some 15 years. *Diamond Shamrock Refining Co. v. Hall*, 168 S.W.3d at 172. Since the valve existed and was historically effective, Diamond Shamrock's failure to install redundant safety measures fell short of illustrating that the company intentionally did nothing to protect Hall from the risk of explosion, according to the Supreme Court. *Id.* The same is no less true at bar.[3]

Agrium mandated a procedure for avoiding the risk of injury when working on pressurized lines. That procedure had been effective over the years. And, had it been followed and the line been fully depressurized, Clark would have not been injured by an exploding cover plate, according to experts. Again, the release of "*all* energy" (or pressure) before work began was what Agrium's procedure required. (Emphasis added). Moreover, an operating gauge was present to determine if all pressure had been released. So too did those attempting to release the pressure subjectively believe that they had performed the task. *See Louisiana-Pacific Corp. v. Andrade*, 19 S.W.3d at 248 (holding that the lack of corporate policies touching upon the lock-out of a crane did not establish gross negligence since the employees subjectively believed that the crane had been locked-out). Given this evidence and Supreme Court precedent, we cannot but conclude that the record before us falls short of allowing a reasonable jury to form a firm conviction or belief that

---

[3]That safety measures were available but not utilized due to the conscious decisions of those in charge differentiates from the situations in *Lee Lewis Constr. Co. v. Harrison*, 70 S.W.3d 778, 786 (Tex. 2001) and *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 925 (Tex. 1998) from that here.

Agrium did not care about the risk of injury posed to Clark.  Thus, the finding of gross negligence at bar lacks the support of legally sufficient evidence.

Having sustained Agrium's first issue, we reverse the judgment of the trial court and render judgment denying Verna recovery against Agrium.

Brian Quinn
Chief Justice