NO. 07-90-0230-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 29, 2008
______________________________

TIMOTHY WAYNE CARTER, JR., 

                                                                                                 Appellant

v.

THE STATE OF TEXAS, 

                                                                                                 Appellee
_________________________________

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 28,148-D; HON. DON EMERSON, PRESIDING
_______________________________

Memorandum Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL AND PIRTLE, JJ.
          Pending before us are two motions filed by appellant. The first is entitled “Motion
for Nunc Pro Tunc to correct clerical mistakes of fundamental error.” The other bears the
label “Motion to obtain documents and trial records in forma pauperis.”


 For the following
reasons, we deny both.
          Regarding the nunc pro tunc matter, he requests that we direct the trial court and
district clerk to include additional documents in the appellate record. These documents
were purportedly omitted from that record. However, we find the request moot for the
conviction involved arose in 1990. It was dismissed by this court in January of 1991, and
we issued mandate in March of 1991. The appeal having ended years ago, supplementing
the appellate record could not affect the outcome. 
          Regarding the motion to obtain his trial records for free, appellant seeks the records
to prepare a petition for habeas relief to the Court of Criminal Appeals. Attempting to
prosecute such a writ evinces that he exhausted his direct appeals. See Ex parte Brown,
662 S.W.2d 3, 4 (Tex. Crim. App. 1983) (stating that one must first exhaust his direct
appeals before invoking art. 11.07). And since his direct appeals have been exhausted,
he is not entitled to a free record. In re McCarty, No. 08-05-0355-CR, 2005 Tex. App.
Lexis 10197 (Tex. App.–El Paso December 8, 2005, orig. proceeding); In re Trevino, 79
S.W.3d 794, 795-96 (Tex. App.–Corpus Christi 2002, orig. proceeding). Thus, the relief
Carter ultimately seeks from the trial court is not permitted by law, without a showing of
exceptional circumstances, In re Trevino, supra, and we have been cited to no such
circumstances. 
          Accordingly, we deny appellant’s motion for a nunc pro tunc judgment and for a free
copy of the record.
 
                                                                           Brian Quinn
                                                                          Chief Justice

Do not publish.



tures constitute a minimal entry and occupation of a confined space
safety program and are discussed with respect to the accident below. 
Unfortunately, I found little or no evidence of these five elements being in
place at the location and time of this accident.


* * *



 In view of the fact that the evidence indicates that no significant effort had
been made to address any of the five points of a basic confined safety
procedure, I can only conclude that those responsible for the safety of Mr.
Perez had willfully disregarded his safety if not by intend [sic] certainly by
omission. It is my opinion that this constitutes gross negligence on the part
of those responsible for Mr. Perez's safety. 


Appellant argues that "the presence and recognition of the need for regulations and the
death resulting from violations thereof present at the very least a scintilla of evidence that
the activity which resulted in Pedro Perez' death involved an extreme degree of risk."

 In an affidavit given several days after the accident, Clarence Boyd averred that
prior to discovering Pedro in bin #2, he had remarked, upon being asked where Pedro was,
that he hoped he was not in one of the bins, "because if he is, he's dead." In his deposition,
taken six years after the occurrence, Boyd stated that if someone was in a bin and was
covered with sand, that person was going to die. Thus, there was some evidence, when
viewed in the light most favorable to appellant, that the act of filling the bins with sand could
present an extreme risk. However, there was no evidence as to the likelihood that
someone would be cleaning the bins at the same time they were to be filled with new
material. There was also evidence that bin #2 was not to be cleaned that day.

 Even assuming there was an extreme degree of risk from the act or omission, we
must determine whether appellee had actual subjective awareness of the risk involved in
this instance but proceeded in conscious indifference to the rights, safety, or welfare of
Pedro. Simple negligence is separated from gross negligence by the defendant's state of
mind. Burk Royalty Co. v. Walls, 616 S.W.2d 911, 922 (Tex. 1981). A defendant's mental
state may be established by circumstantial evidence. Moriel, 879 S.W.2d at 23. An
employer may be grossly negligent as a result of its own conduct or through its
responsibility for the conduct of its employees. Durham Transp. Inc. v. Valero, 897 S.W.2d
404, 412 (Tex.App.--Corpus Christi 1995, writ denied).

 In support of her proposition that she presented more than a scintilla of evidence
on this issue, appellant relies on several specific items of evidence. One such item is
Boyd's testimony that he hoped Pedro was not in one of the bins, because if he was, "he
was dead." Boyd also described the normal procedure utilized, that Pedro would get in a
bin to clean it out, and if he was in a bin when Boyd started the front-end loader to catch
the material coming out of the bin, Pedro would wave his shovel back and forth so Boyd
could see him. On the day of the incident, a truck was being used to catch the material
coming out of the bins rather than the normal loader because it was faster. A loader
smaller than usual was also being used to load the bins. That being so, appellant posits,
Pedro had no warning that operations were about to commence and the only warning
system in place, i.e., the waving of the shovel was not used. Appellant also points out that
appellee was in violation of numerous federal standards designed to prevent this sort of
accident.

 Appellant further relies upon the affidavit of her expert, Dr. Anderson, who offered
the opinions we have previously recited, and who also opined that there appeared to be
a complete lack of emergency egress equipment in the bin and Pedro was not protected
from burial by material being added to the bin from above. Referring to an office
conversation to the effect that bin #2 was not to be cleaned, which occurred allegedly in
Pedro's presence in the office prior to the incident, Dr. Anderson reasons, "[a] simple
conversation about the procedure that was going to be used at that time and that may or
may not have been overheard by Mr. Perez does not constitute adequate communication
in my opinion."

 Through his affidavit, and in his deposition testimony, Boyd averred that in the
control room the morning of the accident, he told Pedro, Danny Ortiz, and Mike Peters, the
plant foreman, that there was no need to clean bin #2. Pedro was still in the control room
when Boyd left to get the truck to begin cleaning the bins. Pedro apparently later left the
control room, but was not missed by anyone for almost an hour because, it was averred,
he often went to use the bathroom during that time of the day. Ortiz then decided to run
the truck to clean bins, so Boyd began filling bins, beginning with bin #2. Boyd stated
positively that the loader could be heard by the person in the bin so that a person cleaning
would know to signal his presence. Boyd testified that he told Pedro they were not going
to clean bin #2 that day. Thus, he did not believe Pedro was in bin #2, but believed he was
in the control room with Mike Peters, because that was the last place he had seen him.
Boyd also averred that Pedro never signaled he was in the bin.

 There is evidence that appellee may not have been in compliance with some of the
requirements of OSHA at the time of the incident, such as a lack of training on work in
confined spaces, a means of egress from the bins, and implementation of a confined
space program. It is also undisputed that the owners of the company knew it was normal
procedure that the person in the bin would wave his shovel as a signal to the person in the
loader or truck that he was in the bin. The violation of OSHA regulations is evidence of the
standard of care due to employees. See Wal-Mart Stores, Inc. v. Seale, 904 S.W.2d 718,
720 (Tex.App--San Antonio 1995, no pet.). Such violations may sometimes serve as the
basis for a gross negligence finding.

 However, the court's holding in Louisiana Pacific Corp. v. Andrade, 19 S.W.3d 245
(Tex. 1999), is instructive on the subjective element of gross negligence. In that case,
Andrade, an employee of a contractor, was attempting to reattach plastic covering that had
come loose from a second story window. To do so, he climbed a ladder which he had
leaned against metal rails that were used to operate an overhead electric crane. Andrade
had been told that the electricity was turned off, but when he touched one of the rails, he
received an electric shock. While there was evidence that the defendant did not have a
written lock-out procedure for electrical equipment, did not have routine safety meetings,
and did not have company-wide safety meetings or safety policies and training, the
managers testified they subjectively believed they had locked out the crane or seen
someone else do so before Andrade began work. Id. at 248. Thus, there was no evidence
that the defendant had actual, subjective knowledge of the risk that the crane was
energized that day or was consciously indifferent to the risk so as to allow recovery for
gross negligence. Id.

 Appellant primarily relies on Mobil Oil Corporation v. Ellender, 968 S.W.2d 917 (Tex.
1998) in support of its position. However, we note that the Andrade court distinguished the
facts before it from those before the Ellender court by noting that while Mobil Oil
Corporation had a detailed policy for monitoring, testing, and warning its own employees
of the risks of benzene exposure, the substance involved there, it had no such policy for
contract employees. This, the Andrade court noted, indicated that Mobil knew of the risks
of benzene exposure but nevertheless proceeded with conscious indifference toward the
safety of contract workers. Andrade, 19 S.W.3d at 247-48. However, in Andrade, the
court held the lack of a corporate policy in its case did not support the same inference
because in this instance, the managers subjectively believed the crane had been locked
out. Id. at 248.

 Similarly, in the instant case, there is no evidence that Boyd or the company officers
or managers subjectively knew of the particular risk to Pedro on the day of the incident or
acted in conscious disregard of a risk to Pedro. Indeed, the evidence here was that Pedro
was present when there was a discussion that no cleaning would be done in bin #2. Pedro
was also still present in the control room when the plant began operations, and Boyd left
to begin his work. Thus, under the evidence, Pedro had no reason to be in bin #2 that day. 
Although the procedures used by the company may have been inadequate, there has been
no demonstration of a "conscious indifference" to the risk that he was in bin #2. Appellant's
issue is overruled.

 


 Finding that the trial court did not err in granting appellee's summary judgment, we
affirm the judgment of the trial court. 


 John T. Boyd

 Chief Justice


Quinn, J., not participating.



Do not publish.
1. Summary judgment was previously granted in favor of Williams & Peters
Construction Company against Shanna Perez in her individual capacity on the basis that
her claims were time barred. That judgment was not appealed.