

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————

No. 02-24-00557-CV

———————————

TARRANT REGIONAL WATER DISTRICT, Appellant

V.

TEX S. FOLLETT JR., Appellee

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CV24-04-267

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

This interlocutory appeal turns on the well-established standard for gross negligence—specifically, the requirement that a defendant must have "actual, subjective awareness" of a peril to be found grossly negligent when the peril causes an injury. Tex. Civ. Prac. & Rem. Code Ann. §§ 41.001(11)(B); *Suarez v. City of Tex. City*, 465 S.W.3d 623, 633–35 (Tex. 2015); *State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). Appellee Tex S. Follett Jr. asks this court to "expand[,] or actually retract[, this] existing law." According to Follett, gross negligence, "[p]roperly defined," should encompass a defendant's negligent failure to discover a premises defect and the defect's associated risk. He thus argues that his jurisdictional evidence raised a fact issue regarding Appellant Tarrant Regional Water District's gross negligence because, he claims, he presented some evidence that the District should have discovered the rotted boards on the public boat dock where he was injured.

But we are not at liberty to rewrite statutes or ignore the binding precedent of the Texas Supreme Court. Because there was no evidence that the District had actual, subjective awareness of the allegedly rotted state of the dock—much less the risk it presented—Follett's gross negligence claim against the District fails, as does his corresponding invocation of the Texas Tort Claims Act's waiver of governmental immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 41.001(11)(B), 75.002(f), .007(b),

101.021(2), .058. The trial court thus erred by denying the District's plea to the jurisdiction; we will reverse and render.

## I. Background

Follett was injured when, in August 2022, his foot fell through a rotted board at a boat dock maintained by the District. He sued for gross negligence, pleading that the District "knew or should have known" of the rotted boards and that it "negligently or willfully allowed such condition to exist by not replacing [the] boards" and by "fail[ing] to warn" Follett of the condition.[1]

The District filed a plea to the jurisdiction. Noting that its governmental immunity was waived only to the extent that it was grossly negligent, *see id.* §§ 75.001(3)(D), .002(f), .007(b), 101.021(2), .058, the District argued that there was no jurisdictional evidence to support the subjective-awareness component of gross negligence—there was no evidence that it had subjective awareness that the dock boards were rotted or that the dock's condition presented an extreme risk of harm.[2] The District's plea was accompanied by a sworn declaration from the reservoirs director who oversaw the dock[3] who averred that

---

[1]Follett's original petition pleaded simple negligence, but after the District filed its plea to the jurisdiction, he amended his petition to allege gross negligence.

[2]The District's plea challenged both the existence of jurisdictional evidence and the sufficiency of Follett's pleadings, but the first challenge is dispositive of this appeal, so we limit our discussion accordingly. *See* Tex. R. App. P. 47.1.

[3]The District also attached photographs of the dock.

- the boards comprising the dock were "designed so that it w[ould] not rot";

- the District "regularly" maintain[ed] the dock and made repairs, including having replaced several boards in October 2020, serviced the dock's lighting in February 2022, and performed general maintenance in April 2022;

- neither the electricians who serviced the dock in February 2022 nor the maintenance workers who visited the dock in April 2022 observed "any defects . . . holes[,] or missing boards at the dock"; and

- between the time of the board replacements in October 2020 and Follett's injury in August 2022, the District had no record of any employee observing or receiving a report regarding rotted boards on the dock, holes in the dock, or "injur[ies] or accident[s] related thereto."

Follett responded to the plea by arguing that the differing colors of boards on the dock demonstrated that the District had repaired boards in the past, that this showed the District's awareness of the dock's degraded condition, that the District had chosen to patch some of the broken boards "instead of replacing the entire board" or "all of the boards on the boat dock," that it "knew or should have known that the boards were too rotten to be patched," and that its failure to "plac[e] barriers or replac[e] damaged boards" presented "an extreme degree of risk" to individuals "who would likely fall through the rotten boards." For support, Follett offered photographs of the dock and a transcript of the lake superintendent's deposition.

The superintendent's deposition did not reveal any awareness of rotted boards on the dock at the time of Follett's injury, nor any awareness of the allegedly insufficient nature of prior board repairs. Rather, the superintendent stated that

4

- in 2022, he and another District worker performed routine inspections of the dock by "driving by and looking all the time" and by examining the dock for specific issues as needed;

- if he discovered a rotted board during his inspections, he would assess the board's integrity, the "screw down points," and the joist support, and depending on those factors, he would replace either the full board or the rotted portion of the board;

- if he discovered a rotted board, he would "[o]f course" inspect the boards around it for integrity as well; and

- he had observed the boat dock's condition in May 2022—just a few months before Follett's injury—and there were "no anomalies, . . . [n]o deck problems[, . . . and n]o broken boards" at that time.

The trial court denied the District's plea without explanation.

## II. Discussion

In its sole issue, the District argues that the trial court erred by denying its plea to the jurisdiction because, among other things,[4] there was no evidence to create a fact issue that the District had actual, subjective awareness of the boat dock's allegedly rotted state or the extreme risk it presented.

### A.     Standard of Review and Governing Law

It is undisputed that the District is a governmental unit—a political subdivision of the state—and as such, it is immune from suit absent a valid constitutional or statutory waiver. *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 663 (Tex. 2019)

---

[4]The District argues on appeal, as it did before the trial court, both that there was no subjective-awareness evidence and that Follett's pleadings were insufficient to support a claim for gross negligence. *See supra* note 2. Because the District's first argument is dispositive, we need not address its second. *See* Tex. R. App. P. 47.1.

("Tarrant Regional Water District is a political subdivision of the State of Texas[, and] . . . is therefore generally immune from suit and liability absent a waiver of its immunity."); *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B) (defining "[g]overnmental unit" to encompass "a political subdivision of this state, including . . . [a] water control and improvement district"); *see also Suarez*, 465 S.W.3d at 631; *Shumake*, 199 S.W.3d at 283; *City of Arlington v. Ukpong*, No. 02-21-00078-CV, 2021 WL 4783169, at *2 (Tex. App.—Fort Worth Oct. 14, 2021, no pet.) (mem. op.). The Texas Tort Claims Act waives immunity for certain premises liability claims against governmental units, but only to the extent of the relevant unit's liability. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(b), .025(a); *Suarez*, 465 S.W.3d at 632. When, as here, a premises liability claim stems from a plaintiff's recreational use of public property,[5] *see* Tex. Civ. Prac. & Rem. Code Ann. § 75.001(3)(D) (defining "[r]ecreation" to include "boating"), then the statutory waiver of immunity applies only if the governmental unit injured the plaintiff "wilfully, wantonly, or through

---

[5]On appeal, Follett raises a one-paragraph alternative argument denying the applicability of the recreational use statute. He asserts that, if the trial court lacked jurisdiction under the recreational use statute, then the statute does not apply because the District acted in bad faith. But Follett did not plead bad faith, nor did he raise it in his response to the District's plea. On the contrary, his response recognized that, "[s]ince this matter involves [the District's] boat dock, the Recreational Use Statute limits recovery to acts of gross negligence."

6

gross negligence."[6] Tex. Civ. Prac. & Rem. Code Ann. § 75.007(b);[7] *Ukpong*, 2021 WL 4783169, at *3; *see* Tex. Civ. Prac. & Rem. Code Ann. § 75.002(f) (providing that a "governmental unit does not owe [a recreational visitor] a greater degree of care than is owed to a trespasser on the premises"), § 101.021(2) (waiving immunity for "injur[ies] . . . caused by a condition or use of . . . real property"), § 101.058 (clarifying Chapter 75's limitations on the liability of a governmental unit control). Here, Follett pleaded gross negligence.

Gross negligence has an objective component and a subjective component: the plaintiff must show (1) an act or omission that, "when viewed objectively from the standpoint of the [governmental unit] at the time of its occurrence[,] involves an extreme degree of risk";[8] and (2) the unit had "actual, subjective awareness of the [extreme] risk involved, but nevertheless proceed[ed] with conscious indifference to the rights, safety, or welfare of others." Tex. Civ. Prac. & Rem. Code Ann.

---

[6] *See Marsillo v. Dunnick*, 683 S.W.3d 387, 393 (Tex. 2024) (holding in medical malpractice context that "willful and wanton negligence is at least gross negligence," if not a higher standard).

[7] *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 n.3 (Tex. 2014) (noting that Section 75.007 of the Texas Civil Practice and Remedies Code "codified th[e] common-law rule" regarding the duty of care owed to a trespasser); Act of May 9, 2011, 82d Leg., R.S., ch. 101, § 3, sec. 75.007(b), 2011 Tex. Gen. Laws 558, 559 (S.B. 1160, effective May 20, 2011).

[8] "Under the first, objective element, an extreme risk is 'not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff.'" *Marsillo*, 683 S.W.3d at 392–93; *Boerjan*, 436 S.W.3d at 311.

§ 41.001(11); *Suarez*, 465 S.W.3d at 633; *Ukpong*, 2021 WL 4783169, at *3; *see Marsillo*, 683 S.W.3d at 392–93. Both components are required; absent evidence of either, the plaintiff's gross negligence claim fails, and with it, the Texas Tort Claims Act's waiver of immunity and the basis for the trial court's subject matter jurisdiction. *See Suarez*, 465 S.W.3d at 631–32.

A governmental unit can challenge the existence of jurisdictional evidence and assert its immunity by filing a plea to the jurisdiction, as the District did here. *See Johnson*, 572 S.W.3d at 664; *Ukpong*, 2021 WL 4783169, at *2. In such instances, the standard of review is similar to that for a summary judgment motion. *Johnson*, 572 S.W.3d at 664. We review the trial court's ruling on the plea de novo, considering the jurisdictional evidence in the light most favorable to the nonmovant to determine whether a fact issue exists. *Id.*; *Suarez*, 465 S.W.3d at 632–33. If the evidence fails to raise a fact issue on the governmental unit's liability—and thus on the statutory waiver of immunity—then the plea to the jurisdiction must be granted as a matter of law. *Johnson*, 572 S.W.3d at 664; *Suarez*, 465 S.W.3d at 633.

**B.    No Evidence of District's Actual, Subjective Awareness**

The District asserts that there was no jurisdictional evidence to raise a fact question regarding its subjective awareness of the boat dock's allegedly rotted condition or the extreme risk it presented. We agree.

Even if we assume that the dock was as degraded as Follett asserts and that its condition presented an "extreme degree of risk," there was no evidence that the

8

District had actual, subjective awareness of that fact. *Cf. Suarez*, 465 S.W.3d at 634 (assuming extreme risk and concluding no evidence of subjective awareness). Follett argued in the trial court that the District "knew or should have known that the boards were too rotten to be patched," but the uncontradicted jurisdictional evidence does not support that assertion.

The jurisdictional evidence showed that a District employee observed the dock in May 2022 and saw "no anomalies, . . . [n]o deck problems[, . . . and n]o broken boards" at that time, and the District had replaced several dock boards more than a year before Follett's injury. The evidence further showed that, since then, it had neither observed nor received any reports of rotted boards, holes in the dock, or injuries resulting from the dock's condition. There was no evidence that the District knew that some boards had been too rotted to be patched, knew that additional boards were rotted or in need of repair, or knew that its patching of damaged boards had been insufficient to render the dock safe. *Cf. id.* at 634–35 (reasoning that, although city failed to reinstall signs warning of wakes and rip currents at dike, the "admonitions on those [previous] signs . . . refer[red] to common marine hazards" and did not support an inference that the city "had actual knowledge of any conditions or risks beyond those open and inherent in open-water recreational use").

Follett's appellate argument indirectly acknowledges the absence of subjective-awareness evidence. He emphasizes the District's lack of knowledge, labeling the District as "negligent[ly] ignoran[t]" by highlighting that—although the District had

9

repaired broken boards in the past and knew that dock boards could degrade—there was no evidence that it had proactively checked for rotted boards that might be on the verge of breaking. Follett asserts that, because the District's ignorance was attributable to its "failure to conduct even one . . inspection" for rotted-but-not-yet-broken boards, such "negligent ignorance . . . should render [the District] liable for gross negligence." According to him, "[p]roperly defined, actual knowledge [should] embrace[] those things that can be determined by exercising the means at hand."

But while Follett argues that this should be the standard for gross negligence, it is not. Both statute and precedent provide that, when a recreational user of property sues a governmental unit for a premises defect, to prove the unit's gross negligence, the plaintiff must offer evidence that the unit had "actual, subjective awareness of the [extreme] risk involved." Tex. Civ. Prac. & Rem. Code Ann. §§ 41.001(11)(B), 75.002(f), .007(b); *Suarez*, 465 S.W.3d at 633–34; *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 660 (Tex. 2007); *Shumake*, 199 S.W.3d at 287; *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225, 232 (Tex. 2004). "[W]ith regard to the subjective component of gross negligence, it is the defendant's state of mind[—]whether the defendant knew about a peril but nevertheless acted in a way that demonstrated that he did not care about the consequences[—]that separates ordinary negligence from gross negligence." *Miranda*, 133 S.W.3d at 232; *see La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 248 (Tex. 1999) (holding that, when plaintiff was injured by touching energized crane, there was legally insufficient evidence to support gross

negligence claim because "all of the testimony indicated that the [defendant's] employees . . . *actually, subjectively* believed that they personally had either locked-out the crane['s power source] *or* that their personal subjective recollection of various events led them to believe that the crane had been locked-out"). And "[a]ctual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time." *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008); *see Suarez*, 465 S.W.3d at 634 (quoting *Stewart*). We cannot rewrite statutes or disregard the decisions of a higher court, and we decline Follett's invitation to do so here.

Applying the prevailing, well-established standard for gross negligence, there was simply no jurisdictional evidence to satisfy it. Even if we assume that the District should have discovered the extent of the alleged degradation by proactively inspecting for rotted-but-not-yet-broken boards, this would not amount to actual, subjective awareness of the dock's alleged condition. Again, there was no evidence that the District had subjective awareness that there were rotted boards on the dock at the time of Follett's injury, that its past repair efforts had been insufficient, or that the dock's patched-but-not-replaced condition presented an extreme risk. And Follett— by labeling the District as negligently ignorant—implicitly acknowledges as much.[9]

---

[9]Follett alternatively argues that if the evidence was insufficient, it "was not entirely [his] fault" because discovery was ongoing, and "[t]he trial court should have

11

Because there was no evidence of the subjective-awareness component of Follett's gross negligence claim, the trial court lacked subject matter jurisdiction. *See Suarez*, 465 S.W.3d at 637 (holding similarly based on lack of evidence that city had subjective awareness of alleged uniquely dangerous condition or extreme risk). We sustain the District's sole issue.

### III. Conclusion

There was no jurisdictional evidence to create a fact issue on Follett's gross negligence claim or on the Texas Tort Claims Act's corresponding waiver of governmental immunity. The trial court thus lacked subject matter jurisdiction, and it erred by denying the District's plea to the jurisdiction. *See id.* at 633 ("If the evidence fails to raise a question of fact, . . . the plea to the jurisdiction must be granted as a matter of law."). We reverse the denial order and render judgment dismissing Follett's gross negligence claim for want of jurisdiction. *See* Tex. R. App. P. 43.2(c).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: July 24, 2025

---

delayed setting a hearing and ruling on the [p]lea until Follett's counsel could conduct adequate discovery." But Follett did not move for a continuance of the plea. And although his jurisdictional response mentioned his alleged "need[] to take additional depositions of Defendant's employees," it is unclear how additional discovery could have materially altered the outcome, given Follett's acknowledgement that the District lacked subjective awareness of the dock's allegedly rotted condition.