Patsy GRAHAM, Individually and as Independent Co–Executor of The Estate of Murlyn Daon Graham, Deceased; Michael D. Graham; Bryan K. Graham; and Nathan L. Graham, Appellants

v.

ADESA TEXAS, INC. d/b/a Adesa Dallas; AMS Staff Leasing, Inc.; and AMS Construction Co., Inc. d/b/a AMS Staff Leasing, Appellees.

No. 05–03–01304–CV.

Court of Appeals of Texas, Dallas.

Sept. 9, 2004.

Rehearing Overruled Oct. 20, 2004.

---

Jack B. Krona, Jr.; and Michael F. Pez-
zulli, Pezzulli, Harris, Krona, Skinner,
L.L.P., Dallas, for Appellants.

Clayton E. Devin, McCauley Macdonald
Devin & Huddleston, P.C., William E.
Reid, Reid & Associates, Dallas, for Appel-
lees.

Before MOSELEY, BRIDGES, and
O'NEILL.

## OPINION

Opinion by Justice BRIDGES.

In two points of error, Appellants assert
that the trial court erred in (1) granting
Appellee–Defendants' summary judgment
on the issue whether they had committed

gross negligence, and (2) refusing to allow Plaintiff–Appellants to amend their petition. We affirm the trial court's holding on the first issue and reverse and remand on the second issue.

## Facts

Adesa Texas, Inc. d/b/a Adesa Dallas ("Adesa") is in the business of conducting automobile auctions. It has a large auction facility in Mesquite, where between 1900 to 2300 automobiles are auctioned each week, requiring some 80 to 100 drivers. Before auctioning, the vehicles are processed by checking them in and assigning them an auction number.

Otto Graham, a seven-year employee, was supervisor of the check-in area. That area is at the top of a two-block long slope. On February 26, 1999, Graham instructed Travis Penny, an employee he supervised, to drive a pickup to the top of the slope. Graham got into the bed of the pickup and another employee sat at the end, with the tailgate down. Penny testified that, as he was driving, a pedestrian stepped into his path. Penny hit the brake, but as he did, his foot slipped and he hit the accelerator. The sudden change in momentum caused Graham to slide out of the truck and hit his head on the pavement. He later died from the head injury. The family received compensation under the Texas Workers' Compensation Act.

Otto's wife and three sons sued Adesa and AMS Construction Company, Inc. d/b/a AMS Staff Leasing ("AMS") for gross negligence in Otto's death. The trial court granted summary judgment in favor of Defendants on the gross negligence claim. Plaintiffs brought this appeal, asserting the ruling on gross negligence was in error and that the trial court erred in refusing them leave to file an amended petition.

## I. Summary Judgment on Issue of Gross Negligence

The Defendants filed a joint motion seeking summary judgment on no-evidence grounds. Rule 166a(i) requires that a no-evidence motion for summary judgment must state the elements as to which it asserts there is no evidence. Tex.R. Civ. P. 166a(i). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. Tex.R. Civ. P. 166a(i); *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion of a fact." *King Ranch,* 118 S.W.3d at 751. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (citations omitted).

The common-law elements of gross negligence are as follows:

> Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right[s] or welfare of the person or persons to be affected by it.

*Universal Servs. Co., Inc. v. Ung,* 904 S.W.2d 638, 640 (Tex.1995) (citing *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981)). Gross negligence has both an objective and a subjective component. *Id.* at 641 (citing *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 21–22 (Tex.1994)). Viewed objectively, the defendant's conduct must create "an extreme degree of risk," which is a function of both the magnitude and the probability of the potential injury. This component is not satisfied

unless the defendant's conduct creates the "likelihood of serious injury" to the plaintiff. *Id.* To assess the degree of risk, the evidence is viewed objectively from the actor's standpoint. *Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 (Tex.1998). The subjective component requires the defendant have "actual, subjective awareness" of the extreme risk involved, but nevertheless proceed in "conscious indifference to the rights, safety, or welfare of others." *Id.* (citing *Moriel,* 879 S.W.2d at 23). Actual awareness means that the defendant knew about the peril, but its acts or omissions demonstrated that it did not care. *Id.*

■ In reviewing evidence of gross negligence for legal sufficiency, we consider whether the proffered evidence, as a whole and viewed in the light most favorable to the nonmovant, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *See Lee Lewis Constr. v. Harrison,* 70 S.W.3d 778, 785 (Tex.2001); *Ellender,* 968 S.W.2d at 922. Some evidence of simple negligence is not evidence of gross negligence; conversely, some evidence of care does not defeat a gross-negligence finding. *Lee Lewis Constr., id.*

■ In examining the legal sufficiency of evidence on the subjective component, the courts focus on the defendant's state of mind, examining whether the defendant knew about the peril but acted in a way that demonstrates he did not care about the consequences to others. *Tex. Dept. of Parks and Wildlife v. Miranda,* 133 S.W.3d 217, 232 (Tex.2004). In *Ellender,* the evidence was legally sufficient to support the subjective component, where Mobil Oil knew of the extreme risk of benzene exposure, and unlike its practices to protect its own workers, it deliberately chose not to warn contractors or monitor their exposure levels. *Ellender,* 968 S.W.2d at

924–25. The evidence was legally sufficient where the corporate principal knew a subcontractor's equipment was ineffective to protect against a fatal fall, as it lacked independent lifelines, unlike the equipment the company supplied for its own workers. The corporate principal had expressly approved the subcontractor's equipment and "did nothing to remedy it." *Lee Lewis Constr.,* 70 S.W.3d at 786.

In contrast, evidence was legally insufficient to support the subjective component where there was no proof that any of the defendant's personnel were consciously indifferent to the risk of electrocution if a crane were energized. *Louisiana Pacific Corp. v. Andrade,* 19 S.W.3d 245, 248 (Tex. 1999). The *Andrade* Court noted that corporate safety policies, or the lack of them, can serve as a basis for gross negligence. *Id.* at 247–48 (citing *Ellender,* 968 S.W.2d at 924–25). The evidence, however, did not support the necessary inference that the defendant's personnel knew of the peril and did not care that other workers encountered it. *Id.*

To show extreme risk, Plaintiffs assert there was no rule prohibiting persons from riding in the back of pickups. The published rule permitted the practice so long as any material in the bed of the truck was anchored. Defendants insisted there was a rule prohibiting riding in a truck bed and the rule was enforced. But Plaintiffs produced testimony from Travis Penny stating that it was "common" to see persons riding in the bed of a pickup. Viewing the evidence in the light most favorable to Plaintiffs, we must credit the testimony that it was "common" on the lot for employees to ride in the back of pickups.

■ Plaintiff's also assert that the safety conditions on the lot were dangerous, citing testimony of Bryan Graham, Otto's son, who worked at the facility for two weeks. They also assert that condi-

tions were deteriorating. They point to evidence of numerous on-site collisions that occurred in the months before Otto's accident in February. In February alone, there were eight separate incidents on the lot involving property damage. The evidence shows only one personal-injury accident occurring before Otto's accident: in January, a motorcyclist collided with a parked car, with the cyclist suffering a face laceration.[1]

Plaintiff's also point to evidence of dangers posed by pedestrians on the lot, left unremedied by Defendants. To show the danger was extreme, Plaintiffs point to evidence that, after Otto's accident, OSHA recommended that Defendants install pedestrian walkways and traffic flow patterns for the lot but Defendants did not act on that recommendation.

We note there is no evidence of an incident causing injury to a rider in the back of a pickup bed. The only previous personal-injury accident involved a motorcyclist and parked car. And there is no evidence of any accident causing a serious head injury. Viewing the evidence as a whole, and in the light most favorable to Plaintiffs, we conclude there is no evidence that, from the Defendants' standpoint, the Defendant's conduct created a likelihood of serious injury or posed an extreme degree of risk.

Even assuming the evidence supported a showing of a known extreme risk, the evidence must support an inference that Defendants demonstrated conscious indifference to the safety of others. Plaintiffs focus on the subjective awareness of Charlie Davis, the transportation supervisor, as a responsible "vice-principal" of Defendants. See *Hammerly Oaks, Inc. v. Ed-*

*wards*, 958 S.W.2d 387, 391 (Tex.1997) (corporation liable for exemplary damages based on its own acts, which include acts of a "vice-principal"). Plaintiffs assert, in particular, that Davis was aware of the lack of a meaningful safety program and of the dangers posed by pedestrians. Davis testified that he held safety meetings three times a week. Ikey Miller, a co-worker with Otto, characterized the safety meetings as "pep talks," but stated Davis would tell them to watch out for pedestrians. When Davis was asked what he would do if he saw someone riding with a tailgate down, he testified he would stop them. Miller testified that he was certain Davis would stop anyone riding on a tailgate, adding "They just didn't put up with something that's not safe." Miller further testified that if Davis saw anyone riding on the back of a golf cart, he would tell them "get off, we don't do that." Plaintiffs assert this evidence shows Davis was subjectively aware of the risk of serious injury on the lot.

We disagree. There is no evidence to support an inference that Davis, or any other vice-principal of Defendants, made any conscious choices that demonstrate they did not care about the consequences of a risk of serious injury. In *Lee Lewis Constr.* and *Ellender,* there was evidence that the Defendants knew of the peril and deliberately chose to do nothing to remedy the situation. *Lee Lewis Constr.,* 70 S.W.3d at 786; *Ellender,* 968 S.W.2d at 921. In contrast, there is no such evidence here. Rather, the evidence of how Davis behaved when he observed a dangerous practice showed that he acted to prevent injury. As in *Andrade,* even if the evidence of lack of corporate safety measures

---

1. Plaintiffs cite evidence of an accident causing a leg fracture and one causing a back-and-neck injury, which required chiropractic treatment. Those injuries, however, occurred after Otto's accident and thus are not relevant to the issue whether the Defendants had previous knowledge of a risk of serious injury.

might support a finding of ordinary negligence, it is not sufficient to support the subjective component of gross negligence in this case. 19 S.W.3d at 247. Because there is no evidence to support an inference that Defendants were consciously indifferent to an extreme risk of injury to others, we affirm the trial court's summary judgment in favor of Defendants on the gross-negligence issue.

## II. Refusal to Permit Filing of Amended Petition

In their original petition, Plaintiffs asserted that Defendants committed negligence and gross negligence. They sought exemplary damages only, stating that both Defendants were Otto's "co-employers," and thus were shielded from liability for paying compensatory damages under the Texas Workers' Compensation Act. TEX. LAB.CODE ANN. § 401 *et seq.* (Vernon 1996 & Supp.2004). Nonetheless, in certain responses to discovery, Adesa disclaimed that it was Otto's employer. Each Defendant, however, asserted in its last pleading (second amended answer) the affirmative defense that it was Otto's co-employer under the staff leasing services act, and thus each was shielded by the workers' compensation act. TEX. LAB.CODE ANN. § 91.001 *et seq.* (Vernon 1996 & Supp.2004).

On March 27, with a trial setting of April 7, Plaintiffs attempted to file an amended petition that sought, in the alternative, actual damages if Defendants were unsuccessful in showing that they were shielded under the workers' compensation statute. Defendants objected, and in a hearing on April 3, the trial court ordered the amended petition struck. The court explicitly stated, however, given that the April 7 trial date would be passed, its ruling was without prejudice to Plaintiffs seeking to file the amended petition in the future. On April 25, Plaintiffs filed an amended motion for leave to file the amended petition. The motion included the grounds that the April 7 trial date had been passed (no new trial date was set), and that based on discovery responses, it did not appear that Defendants met the requirements of the staff leasing services act. Plaintiffs did not request a hearing on the amended motion for leave. The Defendants did not file a response to Plaintiff's amended motion for leave to file. On July 15, the trial court granted the Defendants' summary judgment on the gross-negligence issue, as well as denying all relief otherwise requested. Accordingly, the trial court's order encompasses a denial of the then-pending amended motion for leave to file the amended petition.

Plaintiffs argue that the trial court erred in refusing to allow them to amend their petition because the Defendants failed to show unfair surprise, as required under rule 63 of the rules of civil procedure. TEX.R. CIV. P. 63 ("leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party"). The Defendants argue that Plaintiffs' attempt to file the amended petition violated not only procedural rules, but also the trial court's scheduling order, which required that amended pleadings be filed by February 6.

We review the trial court's decision whether to grant leave to file an amendment for abuse of discretion. *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990). The trial court has no discretion to refuse an amendment unless (1) the opposing party presents evidence of surprise or prejudice, TEX.R. CIV. P. 63 and 66; or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Greenhalgh*, 787 S.W.2d at 939 (citations omitted). "The burden of

showing prejudice or surprise rests on the party resisting the amendment." *Id.* The trial court may conclude that the amendment is on its face calculated to surprise or that the amendment would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial. *Id.* at 940.

Following *Greenhalgh,* we conclude that the trial court erred in denying Plaintiffs' amended motion for leave to file their first amended petition. Defendants have failed to prove the amendment unfairly surprised them. Further, the amended petition did not "reshape" the cause action so as to prejudice Defendants or cause undue delay. In the amended petition, Plaintiffs allege the same set of facts and events to establish ordinary negligence as well as gross negligence. Further, it was clear from the outset that the amount of actual damages would be relevant, even if Plaintiffs could not recover them from a defendant-employer. That is, both Defendants pleaded the statutory exemplary-damages cap, which makes the amount of actual damages relevant. TEX. CIV. PRAC. & REM. CODE ANN. § 41.008 (Vernon Supp.2004); *see Hall v. Diamond Shamrock Refining Co.,* 82 S.W.3d 5, 24 (Tex.App.-San Antonio 2001, pet. granted) (jury needs evidence of compensatory damages to calculate punitive damages under § 41.008). Thus, Defendants have failed to show the amended petition would either reshape the litigation or unfairly surprise them.

We **AFFIRM** the summary judgment on the gross-negligence claim. We **REVERSE** the judgment insofar as it denies Plaintiffs leave to file their amended petition and **REMAND** for further proceedings consistent with this opinion.