**Deny Writ and Opinion Filed October 1, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00922-CV

### IN RE CITY OF DALLAS, Relator

**Original Proceeding from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-12-03665-C**

## OPINION

Before Justices FitzGerald, Francis, and Lewis
Opinion by Justice FitzGerald

Relator, City of Dallas, filed this petition for writ of mandamus requesting that the Court order the trial court to vacate its order denying the City leave to file its fourth amended answer and counterclaim. Because we conclude that the City has not established its right to relief, we deny the petition.

### FACTUAL AND PROCEDURAL CONTEXT

Real parties in interest, Buckley Oil and Rosebud Holding, L.L.C., own three contiguous lots near downtown Dallas where they operate a petrochemical business that stores flammable and combustible liquids in above-ground tanks. They have operated their business on this land since 1957. In 2011, the City's building official revoked the certificate of occupancy for the facility for one of the lots, denied certificates of occupancy for the other two lots, and required the land owners to cease operating immediately. The land owners appealed the decision to the City's board of adjustment, which upheld the building official's decision.

In June 2012, the land owners filed suit against the City, the City's acting building official, and the City's assistant fire marshal. The land owners alleged in their petition that in reviewing and approving any building permits for the property, chapter 245 of the Texas Local Government Code required the city to apply only ordinances in effect at the time the land owners first submitted a permit request. They argued that because the City was attempting to enforce ordinances enacted after the first permit for the project on the property was issued in 1957, the ordinances the City was attempting to enforce could not be applied to the land owners' business. They sought, among other things, to enjoin the enforcement of later enacted ordinances and sought a declaration that the City's fire code, building codes and other ordinances adopted after the initial permits for the project were granted could not be applied to the property. The City answered, asserting the affirmative defense that "Section 245.004 provides certain exemptions to the application of Chapter 245, including, but not limited to, uniform building and fire codes, municipal zoning regulations, and regulations to prevent the imminent destruction of property or injury to persons." The land owners subsequently amended their pleadings to seek a writ of certiorari finding that the action of the board of adjustment was improper and not authorized by the law or facts.

The trial court signed an agreed amended level 2 scheduling order on April 22, 2013, setting the trial date for September 22, 2013. The agreed amended scheduling provided: "The parties may, by signed written agreement, alter the Pretrial deadlines." Under this provision of the scheduling order, the parties agreed to amend the scheduling order to close discovery on August 9, 2013, to extend the deadline for amending pleadings to August 12, 2013, and to extend the deadline for filing dispositive motions to August 12, 2013.

Pursuant to the agreed scheduling order, the parties conducted extensive deposition discovery during the spring and summer of 2013, including deposing fifteen fact and expert

witnesses regarding compliance with the current fire code.  The trial court noted and the mandamus record shows that during the course of discovery, the land owners were consistently careful to determine whether witnesses for the City – whether fact or expert witnesses – asserted violations of any prior version of the fire code or whether the experts had developed opinions regarding any prior versions of the fire code.  In addition, the land owners sent interrogatories to the City to clarify which versions of the fire code the City contended applied to the case.  The City answered, "The Dallas Fire Code provisions that have been violated by [the land owners] were passed by Ordinance No. 26744, which adopted the 2006 Edition of the International Fire Code."   Throughout the course of discovery, with the exception of various incidental mentions in passing of prior versions of the fire code, the City and its witnesses professed to assert only violations of the current fire code, and the City's expert witnesses stated that they had not developed opinions regarding compliance with prior versions of the fire code.

Following the completion of discovery, both the City and the landowners filed amended pleadings on August 12, 2013 – which was the last day to file amended pleadings under the agreed scheduling order.  In its third amended answer and counterclaim filed that day, the City increased the number of violations of the 2006 fire code it asserted from 38 violations to 128 violations, but the City did not at that point assert any violations of any prior version of the fire code.  The land owners also filed a motion for partial summary judgment on that date, requesting that the trial court grant summary judgment on the City's counterclaim in whole or in part, grant judgment as a matter of law on the land owners' claim for declaratory judgment, and order that the City could not introduce evidence at trial or complain that the property did not comply with ordinances, regulations, or statutes enacted after 1957.  In response to the land owners' motion for summary judgment, the City argued that the property violated "several provisions" of the 1948 fire code, which was the version of the fire code in effect on the date the land owners first

–3–

submitted a permit request. In support of its argument that the property violated several provisions of the 1948 fire code, the City cited two provisions of that code, but once again the City did not at that time seek leave to amend its counterclaim to assert any such violations.

Although the scheduling order had initially designated September 22, 2013 as the trial date for the entire case, the trial court determined that it would bifurcate the case, beginning the trial of the case on September 23, 2013 with a determination of the issues involved in the portion of the land owners' petition seeking a writ of certiorari compelling the building official to grant or reinstate the relevant certificates of occupancy. The trial court's proceedings in connection with the writ of certiorari lasted four days. The corporate representative and an expert witness for the land owners testified that the land owners had appropriate permits issued by the City for the tanks installed on the property at the time the tanks were installed. At various points during the four days the trial court devoted to this initial portion of the trial, the trial judge made clear that she was still considering which fire code applied to the property, requested that the parties provide her with information regarding the text of the fire codes at various points in the past, and suggested that the City might wish to consider adding allegations or causes of actions to its pleadings regarding violations of prior versions of the fire code. The City continued to assert that only the current version of the fire code applied, did not at that time attempt to amend its pleadings or seek a trial amendment to assert violations of the 1948 fire code, and adduced no testimony regarding whether or not the facility complied with the 1948 fire code.

On October 18, 2013, roughly three weeks following completion of the portion of the trial that involved the writ of certiorari, but while the trial court's decision on the issues raised by the certiorari trial was still pending, the land owners amended their motion for partial summary judgment adding an attorney's fee affidavit in support of their prior request for summary judgment on attorney's fees and added argument concerning whether the City's ordinances

–4–

authorized it to apply newly enacted development ordinances to existing facilities. The City responded to the amended motion for summary judgment without challenging the amended motion for summary judgment as untimely based on the fact that the amendment was filed after the deadline in the scheduling order for filing dispositive motions.

On November 8, 2013, seven days prior to the hearing on the motion for partial summary judgment, without seeking leave from the trial court, the City attempted to file its fourth amended answer and counterclaim in which, for the first time, it asserted thirty-seven violations of the 1948 fire code. The land owners moved to strike the fourth amended answer and counterclaim as untimely on November 13, 2014. The next day, despite having responded to the amended motion for partial summary judgment without objecting on the basis of timeliness, the City moved to strike as untimely the land owners' amended motion for partial summary judgment.

By written order dated November 15, 2013, following a hearing, the trial court granted the land owners' motion to strike the City's amended answer and counterclaim.[1] The trial court also rendered judgment on the petition for writ of certiorari by written order of the same date. In the order granting the writ of certiorari, the trial court concluded that the board of adjustment erred in revoking and denying the land owners' certificates of occupancy and ordered that the certificates be issued or reinstated.

On November 21, 2013, following rendition of the trial court's judgment on the portion of the land owners' pleadings seeking a writ of certiorari, the City filed a motion for leave to file

---

[1] The trial judge stated at the hearing, "An amended counterclaim requires a motion for leave to file it when the scheduling order has stopped that ability to do that. So for now, until you do it right, I'm going to strike any amended counterclaim and answer." In response to an inquiry by counsel for the City as to whether the trial court would amend the scheduling order to give the City time to file a motion for leave to file its amended counterclaim, the trial court responded, "I don't know yet. I mean, I have been begging the City to have a breakdown of what happened when, which fire code, you know, the whole nine yards. I've waited for two months, okay, to get that answer so I could finish my writ hearing. If I recall correctly from the writ hearing, I never heard about any violations of the '48 fire code. It's never been an issue that's been raised by the parties. And if it's just now being raised, it's way out of time. It would have been nice to have heard it sooner before I ruled on the writ. . . . No one has brought up anything about the '48 fire code. Nothing. And the permit was approved in '57. And no one said that things were installed improperly at that time. So it is -- I've never heard one word that things were not properly installed under the '48 fire code."

its fourth amended answer and counterclaim. The trial court heard the land owners' motion for partial summary judgment and the City's motion for leave to file its fourth amended answer and counterclaim on December 5, 2013. After entertaining minimal argument on the motion for leave to file the City's fourth amended counterclaim, the trial court orally denied the City's motion as untimely.[2]

The trial court then entertained additional argument on the land owner's motion for partial summary judgment and orally ruled that chapter 245 of the government code applied to the project, but that a fact issue existed as to whether the project was a distinct hazard to life or property or posed an imminent danger of destruction of property or injury to persons.[3] In concluding that fact issues remained with respect to the distinct hazard and imminent destruction exception, the trial court thus left open the possibility that some portions of the 2006 fire code would still be applied at the trial of the remainder of the case if the City could establish the distinct hazard or imminent destruction exception. The trial court directed this single remaining substantive issue, and the amount of the land owners' reasonable and necessary attorney's fees, if any, to be set for trial within sixty days.[4]

---

[2] The trial court memorialized its oral ruling in a written order dated January 31, 2014. The City filed a motion for reconsideration of the trial court's ruling two and a half months later on April 18, 2014. The trial court heard the City's motion for reconsideration on May 30, 2014 and signed its order denying the City's motion for reconsideration on June 2, 2014. The City then filed this petition for writ of mandamus roughly six weeks later on July 17, 2014. The land owners argue that laches alone provides sufficient reason for denying the City's petition for writ of mandamus. While the land owner's argument is compelling, particularly in light of the fact that the City was not diligent in pleading its alternative bases for relief in the trial court and also in light of the fact that the City did not pursue leave to amend its counterclaim to assert its alternative liability theory until the trial court had conducted a portion of the bifurcated trial and rendered a partial judgment, our disposition of this petition on its merits makes it unnecessary to determine whether the doctrine of laches would also bar the City's petition.

[3] The trial court memorialized its oral ruling in a written order dated February 28, 2014, in which the trial court granted in part and denied in part the land owners' motion for summary judgment. The trial court determined that the facility was a project protected under chapter 245 of the local government code and that the first permits were issued in 1957. The trial court concluded a disputed fact issue existed with respect to whether the facility constituted a distinct hazard to life or property or threatened imminent destruction of property or injury to persons. The mandamus record does not include an express disposition of the City's emergency motion to strike the amended motion for summary judgment, but the trial court's denial of relief with regard to the matters added in the amended motion rendered the City's complaints regarding the untimely addition of new matter to the motion for summary judgment moot in any event.

[4] Before a new trial date was set, however, the parties became embroiled in a lengthy dispute lasting from the December 5, 2013 hearing through May 30, 2014, concerning whether the City must respond to new discovery requests by the land owners concerning whether the City had caused various regulatory agencies to focus their attention on the property resulting in a two week inspection of the property by the Occupational Safety and Health Administration and a request for the production of 3,000 documents in connection with that inspection. The trial court permitted certain discovery with respect to this series of events. Trial is currently set for the remainder of the case in December 2014.

## ADEQUACY OF APPELLATE REMEDY

We begin by noting that the City's complaint regarding denial of leave to amend arises not in an ordinary appeal, but rather by writ of mandamus. Unlike appeal, which is a matter of right, mandamus is an extraordinary remedy, intended to be available in only limited circumstances, not issued as a matter of right, but rather at the discretion of the court.[5] It is a vehicle for correcting "blatant injustice that otherwise would elude review by the appellate courts."[6] It is available for review of those "significant rulings in exceptional cases"[7] where it will:

> [P]reserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.[8]

As set forth by the supreme court, these factors are conjunctive and while a complete absence of one factor may not necessarily warrant denial of mandamus relief, the presence of each of the factors unquestionably gives greater weight to a petition for writ of mandamus. Although in any case in which a trial court has committed error that might result in reversal on appeal, it could be argued that the parties and the public should be spared the time and expense of awaiting correction of the error on appeal, to conclude that mandamus review is available in any situation where a trial court may have committed reversible error would be to fundamentally alter our system of trial and appeal. As the supreme court has noted, "[a]ppellate courts cannot afford to grant interlocutory review of every claim that a trial court has made a pre-trial mistake."[9]

---

[5] *See In re Reece,* 341 S.W.3d 360, 374 (Tex. 2011) (orig. proceeding); *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding); *Walker v. Packer,* 827 S.W.2d 833, 843 (Tex. 1992) (orig. proceeding).

[6] *In re Reece,* 341 S.W.3d at 374 (citing *In re Prudential,* 148 S.W.3d at 138).

[7] *In re Prudential*, 148 S.W.3d at 136.

[8] *Id.*

[9] *In re McAllen Med. Ctr., Inc.,* 275 S.W.3d 458, 461 (Tex. 2008) (orig. proceeding).

Thus, the supreme court has counseled that a party is not entitled to mandamus relief upon a simple showing that it will be subject to delay, inconvenience or expense if it is required to await correction of the trial court's error on appeal.[10] Rather, mandamus review is more appropriately reserved for trial court errors that "elude[] answer by appeal"[11] and which forever deprive a party of a right that cannot be restored by reversal on appeal.[12] As the supreme court has noted, this category of cases frequently involves situations "in which the very act of proceeding to trial—regardless of the outcome—would defeat the substantive right involved."[13] It is with these principles in mind that we must determine whether the trial court's denial of the City's request for leave to file a fourth amended pleading three months after the deadline set forth in a docket control order is a proper subject for intervention by mandamus. We conclude that in this case, it is not.

In cases such as this one, where discovery is complete, the trial court has conducted a significant portion of the trial, disposing of a substantial portion of case as a result, and only few substantive issues remain pending, mandamus review of interlocutory trial court rulings may actually defeat the goal of judicial economy and efficient resolution of disputes.[14] In *In re Carpenter*,[15] we stated "An improper order prohibiting a party from amending a pleading may be set aside by mandamus" when as a result of denial of leave to amend a "party's ability to present

---

[10] *Walker v. Packer,* 827 S.W.2d at 843.

[11] *In re Prudential,* 148 S.W.3d at 138.

[12] *Id.* ("To deny Prudential enforcement of the jury waiver by mandamus is to deny it any remedy at all.")

[13] *In re McAllen Med. Ctr.,* 275 S.W.3d at 465.

[14] *Id.* at 467 (Because statute requiring plaintiff to support certain health care claims with expert reports "was intended to preclude extensive discovery and prolonged litigation in frivolous cases; review by mandamus may actually defeat those goals if discovery is complete, trial is imminent, or the existing expert reports show a case is not frivolous.")

[15] *In re Carpenter*, No. 05-09-00268-CV, 2009 WL 692686, at *1 (Tex. App.—Dallas, Mar. 18, 2009, orig. proceeding) (mem. op.) (granting petition for writ of mandamus because denial of leave to amend would prevent the party seeking mandamus from asserting defenses at trial and on appeal). The circumstances of *Carpenter* were unique presenting a comparatively rare set of circumstances in which the amended pleading was so similar to the prior pleading that the new matter included in the pleading could not be considered a surprise to the opposing party, but that also raised important new defensive matters that could only be asserted via the proposed amended pleading, such that refusal to allow the amendment would vitiate the relator's defense of the case.

a viable claim or defense at trial is vitiated or severely compromised."[16] However, in accordance with the supreme court's rejection of a "categorical approach" to the determination of when mandamus relief is appropriate,[17] we note that not all denials of leave to amend require correction via mandamus.[18] Rather, the timing of the filing of the proposed amended pleading and the procedural posture of the case at the time the motion for leave to amend is filed weigh heavily in the determination of whether mandamus relief is appropriate or whether review is more appropriate by appeal.[19] In circumstances where the petition for writ of mandamus frustrates, rather than enhances, the efficient resolution of the case as a whole, the appropriate channel for review of a trial court's order regarding amendment of pleadings is by appeal.

**DISCRETION OF TRIAL COURT TO CONTROL ITS DOCKET**

This conclusion, that mandamus relief is not always available from denials of leave to amend, is in harmony with the general standards governing the determination of motions for leave to amend. A party generally has a right to amend its pleadings freely.[20] As the rules of civil procedure reflect, however, this general freedom to amend pleadings must be balanced against the right of the trial court to control its docket in a manner that permits the efficient administration of justice.[21] A trial court has a duty to schedule cases in a manner that will result in the expeditious resolution of disputes.[22] We will not interfere with the trial court's discretion

---

[16] *Id.*

[17] *In re McAllen Med. Ctr.,* 275 S.W.3d at 469.

[18] *In re Belton*, No. 10-06-00293-CV, 2006 WL 2828817, at *1 (Tex. App.—Waco Oct. 4, 2006, orig. proceeding).

[19] *In re McAllen Med. Ctr.,* 275 S.W.3d at 469 ("The balancing analysis we have followed for some years now merely recognizes that the adequacy of an appeal depends on the facts involved in each case.").

[20] *Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc.,* 938 S.W.2d 743, 747 (Tex. App.—Dallas 1996, writ denied).

[21] *See* TEX. R. APP. P. 63 (pleadings, responses of pleas offered for filing after such time as may be ordered under rule 166 shall be filed only after obtaining leave of the judge).

[22] *Clanton v. Clark,* 639 S.W.2d 929, 931 (Tex. 1982) (noting trial court's dismissal of case was justified because trial court was experiencing great difficulty in obtaining compliance of appellant's attorney with the trial court's schedule).

to manage its docket without a clear showing of abuse.[23] A trial court's decision on a motion for leave to amend pleadings must be evaluated in the context of the record of the entire case, and the potential for delay in the ultimate disposition of a case caused by a proposed amendment may be considered in determining whether the trial court has abused its discretion.[24] Thus, we review a trial court's decision whether to grant leave to file an amended pleading for abuse of discretion.[25]

The standards for determining whether a pleading amendment must be allowed reflect this deference to a trial court's right to manage its docket. A trial court must allow a party to amend its pleadings unless the opposing party presents evidence of surprise or prejudice or the trial court finds the amendment is prejudicial on its face and would unnecessarily delay the trial.[26] An amendment is prejudicial on its face if (1) it asserts a new substantive matter that reshapes the nature of the trial itself rather than recasting assertions already made or adding new procedural issues; (2) the opposing party could not have anticipated the amendment in light of the prior development of the case; and (3) the opposing party's presentation of the case would be detrimentally affected.[27] In such circumstances, fairness compels the trial court to continue the case to allow the opposing party to respond to the new matter raised.[28] Thus, amendments that are prejudicial on their face implicate a trial court's ability to dispose of cases efficiently in

[23] *In re Estate of Henry,* 250 S.W.3d 518, 526 (Tex. App.—Dallas 2008, no pet.).

[24] *Smith Detective Agency,* 938 S.W.2d at 749.

[25] *See Roskey v. Cont'l Cas. Co.,* 190 S.W.3d 875, 879 (Tex. App.—Dallas 2006, pet. denied). The trial court's enforcement of its scheduling order is also reviewed for abuse of discretion. *Id.; Gunn v. Fuqua,* 397 S.W.3d 358, 377 (Tex. App.—Dallas 2013, pet. denied) (citing *Hakemy Bros., Ltd. v. State Bank & Trust Co.,* 189 S.W.3d 920, 924 (Tex. App.—Dallas 2006, pet. denied)).

[26] *Graham v. Adesa Texas, Inc.,* 145 S.W.3d 769, 776 (Tex. App.—Dallas 2004, pet. denied) (citing *Greenhalgh v. Serv. Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex. 1990)).

[27] *See Smith Detective Agency*, 938 S.W.2d at 749 (citing *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980)); *Halmos v. Bombardier Aerospace Corp.,* 314 S.W.3d 606, 623 (Tex. App.—Dallas 2010, no pet.).

[28] *See Chapin & Chapin, Inc. v. Texas Sand & Gravel Co., Inc.,* 844 S.W.2d 664, 665 (Tex. 1992) ("If Texas Sand had relied upon the absence of a verified denial to the extent that it was unprepared to proceed to trial and would thus have been prejudiced by Chapin's amendment, it would have been entitled to a continuance.")

accordance with its scheduling orders. For that reason, trial courts are granted discretion to disallow such amendments.

In contrast, an amendment that is of a "formal, procedural nature" typically will not result in surprise or prejudice, and thus a need to allow additional time for trial preparation, and should be allowed in most circumstances.[29] Procedural amendments encompass things such as increasing the *ad damnum* to conform to the evidence introduced without objection at trial or substituting a verified denial for an unverified denial.[30] Even additional, separately stated causes of action may not constitute new subject matter if the added claims have common elements with claims previously asserted and require the same evidentiary proof required to support an already pleaded claim or defense.[31] This is not such a case. We cannot conclude that the trial court abused its discretion in determining that the amendment the City sought in this case would unnecessarily delay the ultimate disposition of the case. The trial court had largely already resolved the merits based on the existing pleadings. The City's amendment would have reshaped the case in a way that would require the Court to reopen discovery out of fairness to the land owners.

The City argues that both its original claims under the current fire code and its new claims of violations of the older fire code are based on the same set of facts and events that are the basis of the original pleading, and that both sets of claims arise under chapter 54 of the local government code; it is only the editions of the underlying fire codes that have changed. The City contends that all of the violations it sought to assert violate similar or identical provisions in the 1948 fire code and the current fire code. The land owners demonstrated in the trial court,

---

[29] *Id.*

[30] *Id.*

[31] *Smith Detective Agency*, 938 S.W.2d at 749; *see also Graham,* 145 S.W.3d at 776 ("Plaintiffs allege the same set of facts and events to establish ordinary negligence as well as gross negligence.").

however, that the definitions and terminology of the new and old fire codes vary significantly, such that the evidence required to prove a violation of the 1948 fire code and the evidence required to prove a violation of the current fire code would be substantially different. Specifically, the landowners noted that there are differences in the 1948 and current fire codes with respect to, among other things, the types of tanks that need permits, the spacing requirements and which sorts of tanks those requirements apply to, the diking requirements, the types of supports required for tanks, whether riveted tanks are permitted, the manner in which combustible liquids are addressed, how tanks are to be vented, and whether leak testing is required.

Prior to the attempted amendment of the City's counterclaim, the nature of the City's pleadings simply required the landowners to demonstrate that the City was attempting to apply an inapplicable set of regulations to their property. With the amendment, the landowners would be required to prove that their facility did, in fact, comply with the 1948 fire code. The evidentiary burdens for these two defensive strategies are significantly different. At an earlier point in the case, requiring the landowners to develop such a defense would not have been prejudicial.[32] The motion for leave to amend was not filed, however, until discovery was

---

[32] The trial court noted that it would have been receptive to such an amendment earlier in the case before so many issues in the case had already been resolved by the trial of the writ of certiorari. The court commented:

> I never understood why y'all were not arguing the prior fire codes, but you persistently clung to the modern fire code. And based on that and many hours of contemplation and hearings, the rulings of the Court are what they are. I do have a scheduling order. All the pleadings are supposed to have been filed at this point. This case was filed June 13, 2012, and you're asking leave to file an amended petition because finally you're thinking what I'm thinking is you should have been applying those fire codes before now.

The trial court further noted:

> I've heard many hearings where the City has just absolutely staunchly said, We're just talking about the '06 fire code. Everything has been based on that, and I was quite surprised that that was the City's position. And there's been discussion about that, too, until right now. And this case has been going on for years. We've had so many hearings, summary judgments and everything else, that it just goes on for page after page. So for the City to come in now and all of a sudden say, King's X, I misled you on all of that, is a real problem for the efficiency of this Court and for the time and effort put in by everybody involved here…. I've been aware that there have been differences in the fire codes, and I have been just stumped as to why the City just kept going on to '06, but it has. . . . I have been extremely frustrated with hearing about these other fire codes for years now, and yet you refuse to amend. . . . I mean, it's taxing my patience now big time for me to now go back and find out what I wanted to know for the last two years.

–12–

completed, expert witnesses designated and reports on file, and a portion of the case already tried and disposed of through bench trial. The motion for leave to amend was filed just two weeks prior to the hearing on the land owner's motion for summary judgment that sought to dispose of the remainder of the case, and that the trial court would ultimately grant in large part. The trial court did not abuse its discretion in concluding that allowing the amendment of the City's pleadings at the time the City sought its amendment, "would totally recouch this whole complicated case and be incredibly expensive" because the changes the City sought were significant enough to require, at a minimum new expert reports,[33] and would very likely require all discovery and the deadline for dispositive motions to be re-opened, and the establishment of a new trial date. The amendment would have reshaped the trial of the case from one that would address only the two remaining questions – whether the condition of the facility constituted an imminent danger to property or persons and the amount of attorney's fees incurred in resolving the declaratory judgment aspects of the case – to one requiring the determination of whether and how the facility violated a regulatory scheme from the distant past.

The City further argues that the real parties could have anticipated the amended pleading because it was real parties who first asserted the application of the 1957 fire code and because the trial judge consistently expressed doubt whether the current fire code could be applied in the case. Throughout the litigation, the City took the position that only the current, more restrictive fire code is applicable in this case. The parties took fifteen fact and expert witness depositions and conducted all discovery on this basis. During discovery and the writ of certiorari proceedings, the land owners were careful to determine whether the City's witnesses were testifying with regard to anything other than compliance with the current fire code. As the trial

---

[33] Although the City takes the position that the land owners have taken all of the discovery that they need or are entitled to, the City cites only two instances in which its experts discussed their opinions regarding the land owner's compliance with the prior fire code. Its expert, Peter Rollinger, stated in a three line exchange that riveted storage tanks were not permitted under the 1948 fire code. Its expert, Dr. Mannan, stated that the land owners "violate multiple standards beyond those codified in the current fire code."

court noted, "the irony is that the plaintiff has consistently checked to be sure the City wasn't changing their position about the fire code they wanted to apply." The land owner's discovery of the City's position in the case has been restricted to the City's claims with regard to the current fire code.

Finally, the City argues that the trial court's order could not be premised on the likelihood that trial would be delayed as a result of the necessity for additional discovery because at the time the City filed its motion for leave to amend, there was no pending trial setting. This Court has previously rejected such arguments. The mere fact that a trial setting has come and gone does not prevent a trial court from enforcing other deadlines in its scheduling orders that are not calculated based on the trial setting.[34] Moreover, the mandamus record is clear that the trial court considered the case to be ready for trial following its conclusion of the writ of certiorari proceedings. The trial court expressed concern that allowing the amendment at the time it was offered would require the court to allow discovery to be re-opened as to both fact and expert witnesses so that the land owners could determine the factual and legal bases for the City's contentions that the facility was not in compliance with older versions of the fire code. At that point, it had already conducted a bench trial as to the petition for writ of certiorari. It had before it a motion for partial summary judgment, which it orally granted less than a month after the City's first attempt to amend its counterclaim, leaving only the questions whether the current fire code could be enforced because the facility constituted a distinct hazard or threatened imminent destruction of property and the amount of attorney's fees incurred in prosecuting the declaratory judgment aspect of the case. We hold the trial court did not abuse its discretion in concluding

---

[34] *In re Staff Care, Inc.,* 422 S.W.3d 876, 883 (Tex. App.—Dallas 2014, orig. proceeding) ("We also reject Staff Care's argument that the deadlines in the agreed scheduling order could not be enforced after the original July 22, 2013 trial date passed."); *In re Carpenter,* No. 05-08-00083-CV, 2008 WL 384569, at *2 (Tex. App.—Dallas Feb. 14, 2008, no pet.) (mem. op.) ("movement of the trial date did not automatically move the pretrial deadline").

that allowing the City's proposed amendment at this point in the case would interfere with the orderly disposition of the case.

## NO ARBITRARY ENFORCEMENT OF THE SCHEDULING ORDER

The City also argues that the trial court has not treated the parties consistently and that in failing to do so, the trial court has abused its discretion. "Bias by an adjudicator is not lightly established" and "judicial rulings almost never constitute a valid basis for a bias or partiality challenge."[35] The remedy for unfair rulings is to assign error to the ruling itself rather than to complain of bias.[36]

The City points to two instances that it contends show that the trial judge was not even-handed in its treatment of the parties. First, it argues that the trial judge refused to strike the plaintiff's amended motion for summary judgment even though the amendment was made after the deadline for filing dispositive motions, but refused to allow the City's late-filed amendment of its counterclaim. The amendments to the motion for summary judgment and the proposed amendments to the City's counterclaim were not of similar magnitude to the case. As initially filed, the motion for summary judgment had argued that prior versions of the fire code applied under chapter 245 of the Texas Local Government Code and that there was no distinct hazard to life or property or threat of imminent destruction of property or injury to persons as defined by chapter 245. The amended motion for summary judgment argued that in addition to the bases cited in the timely filed motion for summary judgment, the City's ordinances also prevented application of the current fire code  The amended motion for summary judgment also added evidence on attorney's fees. It is not clear from the record whether the trial court considered the

---

[35] *Celis v. State,* 354 S.W.3d 7, 24 (Tex. App.—Corpus Christi 2011), *aff'd*, 416 S.W.3d 419 (Tex. Crim. App. 2013); *accord Liteky v. United States,* 510 U.S. 540, 555 (1994) (judicial rulings "can only in the rarest circumstances evidence the degree of favoritism or antagonism required to establish bias")

[36] *Sommers v. Concepcion,* 20 S.W.3d 27, 41 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("A party's remedy for unfair rulings is to assign error regarding the adverse rulings."). The City has not requested that this Court grant mandamus relief from either of the rulings that it contends demonstrate the trial court's failure to treat the parties consistently.

amendments to the motion for summary judgment in making its ruling, or whether it ultimately declined to consider the amendments to the motion for summary judgment on the ground that they were untimely. There is no written order on the motion to strike the amendment to the motion for summary judgment.[37] In any event, the City's motion to strike the amended motion for summary judgment became moot with the trial court's denial of relief on the substantive grounds raised in the amended portion of the motion. Thus, the trial court's actions with respect to the amended motion for summary judgment cannot establish bias.

The City also argues that the trial court's order allowing the plaintiffs to conduct late discovery to determine whether the City orchestrated increased regulatory attention to the facility shows that the trial court has not behaved in an unbiased fashion. After the trial court ruling on the motion for partial summary judgment, it became clear that the City must demonstrate that the facility was a distinct hazard to life or property or threatened imminent destruction of property or injury to persons to allow the application of the current fire code. Shortly thereafter, the facility became the subject of an extensive inspection by the Occupational Safety and Health Administration that extended roughly two weeks and required the production of 3,000 documents. The land owners asserted to the trial court that they had never before been subjected to such an extensive investigation and requested discovery to determine whether the City had instigated this attention in an attempt to "gin up" evidence that the facility was a distinct hazard to life or property or threatened imminent destruction of property or injury to persons.

At the time of the hearing, the information available to the plaintiffs showed that one of the attorneys representing the City in the case had in fact been in contact with OSHA. When asked by the trial court whether it had instigated those regulatory contacts, the City stated, "We

---

[37] At the hearing, the trial court took the City's motion under advisement stating, "The MSJ was filed timely. I don't know what was added or wasn't added [by the amended motion for partial summary judgment.] I haven't looked at it yet. . . .So now I'm going to look at the motion for summary judgment, and I'm not going to strike anything until I look at it. Right now I've just got conclusory statements that's different, but I don't know how it's different."

are not going to respond," and argued that the attorney's contact with OSHA was work product because she was "getting ready for trial." The trial court disagreed, stating that "this has nothing to do with getting ready for this case," and ordered the deposition of the attorney, allowing her to assert privilege as necessary. The trial court's allowance of this discovery on this subject outside of the period provided by the scheduling order was not improper because the conduct giving rise to the need for discovery had not occurred until after the discovery deadline had passed. The trial court did not abuse its discretion in allowing that deposition given the circumstances.

## CONCLUSION

Mandamus is an extraordinary remedy that is available only in limited circumstances.[38] Mandamus is appropriate "only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law."[39] The City has not shown that the trial court has clearly abused its discretion and that it has no adequate appellate remedy.[40] We deny the petition.

140922F.P05

/Kerry P. FitzGerald/

KERRY P. FITZGERALD
JUSTICE

---

[38] *CSR Ltd. v. Link,* 925 S.W.2d 591, 596 (Tex. 1996) (orig. proceeding) (citing *Walker,* 827 S.W.2d at 840.)

[39] *Link*, 925 S.W.2d at 596.

[40] *In re Prudential,* 148 S.W.3d at 135–36; *Walker,* 827 S.W.2d at 839.